**NORTHEAST DEPARTMENT ILGWU HEALTH AND WELFARE FUND and Sol Hoffman, Appellees,**

v.

**TEAMSTERS LOCAL UNION NO. 229 WELFARE FUND, Appellant.**

No. 84–5036.

United States Court of Appeals, Third Circuit.

Argued July 20, 1984.

Decided May 23, 1985.

Sloviter, Circuit Judge, filed concurring opinion.

Fullam, United States District Judge for the Eastern District of Pennsylvania, sitting by designation, filed concurring opinion.

Charles W. Johnston (argued), Handler, Gerber, Johnston, Strokoff & Cowden, Harrisburg, Pa., for appellees.

Robert D. Mariani (argued), Mariani & Greco, Scranton, Pa., for appellant.

Before SLOVITER and BECKER, Circuit Judges, and FULLAM, District Judge.*

## OPINION OF THE COURT **

BECKER, Circuit Judge.

This appeal, arising from a dispute between two employee benefit plans existing under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1002(1) & (3) (ERISA), presents two difficult questions. The first concerns the existence of federal subject matter jurisdiction. The second, a classic insurance coverage question, requires us to determine which of the two ERISA plans, the Northeast Department International Ladies' Garment Workers' Union Health and Welfare Fund (ILGWU Fund) plan or the Teamsters Local Union No. 229 Welfare Fund (Teamsters Fund) plan, each of which contains "other insurance" provisions, is responsible for the medical bills of a woman who is a participant of the former and a beneficiary of the latter.

We conclude that the district court properly exercised subject matter jurisdiction over this suit.[1] We also conclude that trustees of an employee benefit plan have the power to incorporate into the plan "other insurance" provisions unless in doing so they violate ERISA's fiduciary duty standard, 29 U.S.C. § 1104, by acting in an arbitrary and capricious manner. Finally, we conclude that the decision of trustees to incorporate an escape clause in a benefit plan—through which the plan attempts to escape all liability if a participant or beneficiary is covered by another plan, regardless

---

* Honorable John P. Fullam, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

** This is the opinion of the Court except as to part IIB. *See infra* note 1.

1. The panel is divided as to the basis for that jurisdiction. Part IIA of this opinion reflects the views of Judges Sloviter and Becker on one facet of the jurisdictional problem; part IIB reflects the views only of Judge Becker on another aspect of the problem; and the issue is explored further in the separate concurring opinions of Judges Sloviter and Fullam.

of the level of benefits provided by the other plan—constitutes arbitrary and capricious conduct. We will therefore reverse the judgment of the district court that enforced the escape provision in the ILGWU plan and assigned liability for the benefits in question to the Teamsters Fund.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

### A. Events Leading to the Present Suit and Contentions of the Parties

Ruth Fazio is an employee in the garment industry and a participant in the ILGWU plan, an employee benefit plan within the meaning of ERISA, 29 U.S.C. §§ 1002(1) & (3). Mrs. Fazio's husband, Nicholas Fazio, is a participant in the Teamsters plan, which is likewise an employee benefit plan within the meaning of ERISA. Both plans pay for medical care for their respective employees. In addition, the Teamsters Fund provides medical coverage for the spouse and children of covered employees, and Mrs. Fazio is thus a beneficiary of the Teamsters Fund.

In March 1981, Mrs. Fazio underwent medical treatment and subsequently submitted her medical bills to the ILGWU Fund. The ILGWU Fund advised Mrs. Fazio that she was not eligible for benefits under its plan because she was covered by the Teamsters plan. Mr. Fazio thereupon submitted a claim for his wife's medical bills to the Teamsters Fund, but that fund advised Mrs. Fazio that it would not pay these bills because she was covered by the ILGWU plan.

Faced with one set of medical bills and two insurers who refused to pay, Mrs. Fazio filed suit in the United States District Court for the Middle District of Pennsylvania, naming both funds as defendants. Federal jurisdiction was grounded on 29 U.S.C. § 1132(a)(1)(B). From the outset, it was clear that Mrs. Fazio was entitled to reimbursement for her medical expenses from one of the funds. The district court thus thought it unfair for Mrs. Fazio to incur counsel fees and to wait for payment while the court decided which of the funds

was liable for her bills. The court therefore suggested, and defendants agreed, that (1) the ILGWU Fund would pay Mrs. Fazio's claim, (2) the action brought by Mrs. Fazio would then be dismissed, and (3) the ILGWU Fund would file, contemporaneously with the dismissal, a complaint in federal court against the Teamsters Fund seeking a declaration of the rights and obligations of the two funds regarding Mrs. Fazio and persons similarly situated.

This agreement was promptly carried out. Federal jurisdiction over the new suit was predicated on two provisions of ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3). In addition to the ILGWU Fund, Sol Hoffman, Chairman of the Trustees of the ILGWU Fund, was added as a party-plaintiff. The parties stipulated to the facts and cross-moved for summary judgment. Each fund contended that its applicable "other insurance" provision, that is, the language in its benefits plan purporting to exclude from coverage persons in Mrs. Fazio's position, was controlling. In addition, the Teamsters Fund argued that, if the ILGWU Fund's provision operated as the ILGWU trustees contended, those trustees were acting in an arbitrary and capricious manner, in violation of their fiduciary duties as set out in ERISA at 29 U.S.C. § 1104, because they were discriminating among participants on the basis of sex and marital status.

### B. Relevant Terms of the Plans

Both the ILGWU and the Teamsters plans have "other insurance" clauses providing for situations in which a participant or beneficiary is covered by another insurance policy or plan. Specifically, each plan has a coordination of benefits ("COB") section that sets out when the plan intends to be the primary insurer of a participant or beneficiary and when it intends to be a secondary or excess insurer. See infra notes 9 & 10. The Teamsters Fund's COB provision states that "a[nother] plan covering the patient directly, rather than as an employee's dependent, is primary." The ILGWU Fund COB provision does not ap-

ply to the situation in which a participant is also a potential beneficiary of a spouse's plan. Instead, the ILGWU plan has a separate section labeled "Exception to Eligibility," which states:

> Exception to Eligibility—You are not eligible for hospital, medical-surgical, or Major Medical benefits under this plan if there exists at your spouse's place of employment a group plan which provides for family coverage of these types of benefits so long as 50% or more of the cost of such family coverage is paid for by other than you or a member of your family.

*Id.* at 54a. The Teamsters plan does not have any provision comparable to the ILGWU plan's "Exception to Eligibility" clause.

### C. *District Court Opinion and Judgment*

The district court, 584 F.Supp. 68, granted summary judgment for ILGWU, holding the Teamsters Fund liable for Mrs. Fazio's medical bills. The court predicated its judgment on the fact that the "Exception to Eligibility" language in the ILGWU plan excludes coverage for employees if there exists at their spouse's place of employment a group plan that provides for family coverage, whereas the Teamsters plan provides that it will be an excess insurer only if a beneficiary is covered by another plan. The court concluded that, since the Teamsters Fund exists, Mrs. Fazio is not covered by the ILGWU plan. The court further concluded that, because the Teamsters Fund purports to provide excess coverage only where a participant's spouse is covered by another plan and provides primary coverage otherwise, the Teamsters Fund is liable for all of Mrs. Fazio's medical expenses. Influencing the court's analysis was its concern that the ILGWU Fund ought to be able to protect its "limited financial resources" by shifting liability to the wealthier Teamsters Fund. *See* Appellant's Appendix at 130a n. 6 ("The court recognizes the fact that generally members of the ILGWU have lower salaries than members of the Teamsters Union. It

therefore follows that the ILGWU Fund has more limited financial resources from which to draw in distributing.") Finally, the court rejected the Teamsters Fund's argument that the ILGWU Fund provision is discriminatory and in violation of § 1104 of ERISA.

The Teamsters Fund appeals. Although both funds maintain that we have jurisdiction over this suit, we expressed concern about this issue at oral argument and requested that the funds file supplemental briefs on this point. In addition to supporting the allegation in its complaint that jurisdiction properly rests on § 1132 of ERISA, the ILGWU Fund contended in its supplemental brief that federal jurisdiction also can be based on 28 U.S.C. § 1331.

### II. *FEDERAL JURISDICTION*

The first question we must address is whether this action is cognizable in federal court. Although the panel is unanimous that the district court acted properly in exercising jurisdiction, it is divided as to the basis for this conclusion. Part IIA reflects the view of Judges Sloviter and Becker that jurisdiction over this suit cannot be obtained through the express grant of ERISA, 29 U.S.C. § 1132. Part IIB reflects Judge Becker's theory that jurisdiction can be founded upon the federal question statute, 28 U.S.C. § 1331, because the case arises under federal common law. Judge Sloviter agrees that § 1331 provides subject matter jurisdiction, but sets forth her theory of federal question jurisdiction in a separate statement. In his separate concurrence, Judge Fullam expresses the view that this suit is cognizable under § 1132(a)(3).

### A. *ERISA Jurisdictional Provisions*

Federal jurisdiction over Mrs. Fazio's original suit was unassailable. ERISA, at 29 U.S.C. § 1132, provides, in pertinent part, that:

> (a) A civil action may be brought—
>
> (1) by a participant or beneficiary—
>
> .     .     .     .     .

(B) to recover benefits due to him under the terms of the plan, to enforce his right under the terms of the plan, or to clarify his rights to future benefits under the plan ...

Mrs. Fazio is a beneficiary of the Teamsters plan and a participant of the ILGWU plan,[2] and her suit was brought to recover benefits, to enforce rights, and to clarify rights to future benefits under the terms of these plans. Thus, if Mrs. Fazio had remained a party to this action, the district court unquestionably could have exercised jurisdiction pursuant to 29 U.S.C. § 1132(a)(1)(B).

■ Jurisdiction over the present suit between the ILGWU and Teamsters Funds, in the absence of the participation of Mrs. Fazio, is much more problematic. Neither the ILGWU Fund, its trustee Hoffman, nor the Teamsters Fund is a participant or beneficiary under the terms of either benefits plan. *See supra* note 2 (definitions). The parties argue that the district court had jurisdiction under § 1132(a)(1)(B) nevertheless. According to both the ILGWU and Teamsters Funds, the ILGWU Fund has the capacity to sue under this provision as a representative of all the participants and beneficiaries of the ILGWU Fund who are also beneficiaries of the Teamsters Fund and who are being harmed or who will be harmed in the future by the operation of the Teamsters Fund's interpretation of its plan. In essence, the parties argue that, although Mrs. Fazio no longer has a claim, and although the procedure is not expressly authorized by ERISA, the trustees of one fund can "stand in the shoes" of certain aggrieved beneficiaries of another fund and sue on their behalf.

Two cases from other circuits lend some support to this contention. In *International Association of Bridge, Structural and Ornamental Iron Workers Local No. 111 v. Douglas*, 646 F.2d 1211 (7th Cir. 1981), the Seventh Circuit held that a union has standing to sue under § 1132(a)(1)(B) on behalf of its members in order to clarify their future rights to benefits under a pension plan. The court did not, however, attempt to reconcile this result with the express words of the statutory provision— which do not include unions among the persons or entities that may bring suit. The other case relied upon by the ILGWU and Teamsters Funds is *Fentron Industries v. National Shopmen Pension Fund*, 674 F.2d 1300 (9th Cir.1982). In *Fentron*, the Ninth Circuit, relying on *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), determined that a party has standing to sue under a federal statute if his alleged injury "fall[s] arguably within the zone of interests protected by the statute allegedly violated," so long as "the statute itself does not preclude the suit." *Id.* at 1304. Using this test, the court decided that an employer suing a pension plan on behalf of aggrieved employees has standing under ERISA. The court stated that the "omission of employers from 29 U.S.C. § 1132 is not significant in this regard," *id.* at 1305, holding that since "[t]here is nothing in the legislative history to suggest that ... the list of parties to sue under this section is exclusive[,] ... the statute does not prohibit employers from suing to enforce [ERISA's] provisions." *Id.*

During the pendency of this appeal, another panel of this court rejected a liberal reading of § 1132(a)(1)(B). In *New Jersey State AFL–CIO v. New Jersey*, 747 F.2d 891 (3d Cir.1984), a labor union sued the State of New Jersey in federal court for a declaratory judgment that four New Jersey statutes were invalid because they were preempted by ERISA. The panel held that

---

**2.** ERISA defines a "participant" as

any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit. 29 U.S.C. § 1002(7). A beneficiary is defined as a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder. 29 U.S.C. § 1002(8).

this case did not arise under the jurisdictional provisions of ERISA because:

> only participants and beneficiaries may bring suit (in either state or federal court) to clarify rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). The statute defines "participants" as employees or former employees who are, or may be, eligible to receive benefits ... and "beneficiaries" as people designated by a participant who may become eligible to receive benefits.... *It is clear from the statute that labor unions are neither participants nor beneficiaries, and consequently plaintiff does not fall within this provision. Id.* at 892 (emphasis added).

*Id.,* slip op. at 4. Although *AFL–CIO* does not directly control the question whether a benefit fund (as opposed to a labor union) can sue under § 1132(a)(1)(B), we believe that the case implicitly adopted the view that § 1132 must be read narrowly and literally.[3] Such a reading precludes the interpretation that a pension fund or a trustee (fiduciary) of a fund can sue under § 1132(a)(1)(B) on behalf of participants or beneficiaries. Accordingly, we hold that jurisdiction over this suit cannot be predicated on 29 U.S.C. § 1132(a)(1)(B). The Second Circuit, also faced with a suit brought by an employee benefit fund, reached this same conclusion.[4]

The parties argue in the alternative that federal jurisdiction over this action may be predicated on 29 U.S.C. § 1132(a)(3). This section of ERISA provides that a civil action may be brought:

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan....

According to the ILGWU and Teamsters Funds, this suit can be characterized as one being brought by ILGWU trustee Hoffman, who is a fiduciary under the terms of ERISA, "to enforce" the terms of the ILGWU plan against the Teamsters Fund, thereby bringing it within the scope of this statutory provision. This analysis, although perhaps superficially appealing, is based on an untenable legal fiction. The Teamsters Fund is not a party to the ILGWU plan, and it has not violated or threatened to violate the terms of that plan. Thus, it cannot be said that the terms of the ILGWU plan are being "enforced" against the Teamsters Fund through this lawsuit. The persons who have the power and the duty to enforce the relevant por-

---

**3.** *AFL–CIO* is not inconsistent with an earlier decision of this court holding that an employer can also be an ERISA fiduciary with authority to sue under § 1132(a)(3) *(see infra* at 153–154). *United States Steel Corp. v. Commonwealth of Pennsylvania Human Relations Commission,* 669 F.2d 124 (3d Cir.1982). That case did not liberally construe § 1132 to encompass suits brought by employers. Rather, it held that there is no reason why an employer who falls within the plain language of § 1002(21)(A) of ERISA, which defines "fiduciary" *(see infra* at 154), should be deprived of his ability to sue pursuant to § 1132(a)(3) merely because he is also an employer.

The matter of federal question jurisdiction was not raised by the parties in *AFL–CIO,* nor was it considered by the panel.

**4.** *See Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889 (2d Cir.1983), where the court disagreed with the *Fentron* analysis, arguing that the key question is not whether Congress prohibited a broad reading of ERISA's jurisdictional provi-

sions, but whether, given the fact that the federal courts are courts of limited jurisdiction, Congress intended entities other than those expressly mentioned in § 1132 to have a cause of action under ERISA. The court concluded that the grant of jurisdiction in § 1132 is "specific and exclusive," and that a fund itself cannot sue under the act. *Id.* at 893; *see also Tuvia Convalescent Center, Inc. v. National Union of Hospital and Health Care Employees,* 717 F.2d 726, 729–30 (2d Cir.1983) (employer has no standing to sue under § 1132).

In *Pressroom Unions,* the court noted in a footnote that "[s]ince the plaintiff has not claimed subject matter jurisdiction under 28 U.S.C. § 1331 (1976) ..., we express no views on the possible relevance of that statute." 700 F.2d at 892 n. 7. Nor did the court consider the issue in *Tuvia.*

tions of the ILGWU plan are the ILGWU Fund trustees themselves, and the Teamsters Fund is not preventing them from carrying out their obligations.

The parties have another way of characterizing the present suit in an attempt to bring it within § 1132(a)(3). They claim that this action can be viewed as a suit by Hoffman, a fiduciary under ERISA, to enforce the terms of the Teamsters plan—which he contends are presently being misread to deny benefits to Mrs. Fazio and persons similarly situated. We believe that such an interpretation of § 1132(a)(3) would distort the plain language of this provision. Section 1132(a)(3) contemplates "fiduciaries" suing to enforce the terms of "the plan," meaning the terms of the plan regarding which they have a fiduciary duty. Indeed, this interpretation is also compelled by the fact that one's status as fiduciary under ERISA is dependent upon one's relationship to a particular plan. ERISA provides that "a person is a fiduciary with respect to a plan to the extent ... he exercises any discretionary authority or discretionary control respecting management of such plan or ... disposition of its assets...." 29 U.S.C. § 1002(21)(A). Jurisdiction cannot be predicated on the mere coincidence that Hoffman is a fiduciary of a benefit plan unrelated to the one which he seeks to enforce.[5]

For the foregoing reasons, we hold that the express jurisdictional provisions of ERISA, found in 29 U.S.C. § 1132, do not authorize federal jurisdiction over a suit, such as the one at bar, brought by a pension fund and its trustee against another pension fund.[6]

### B. "Arising Under" Jurisdiction: 28 U.S.C. § 1331

The ILGWU Fund argues in its supplemental brief that if this court holds that the present action is not expressly authorized by § 1132 of ERISA, federal jurisdiction may nonetheless be predicated on the federal question statute, 28 U.S.C. § 1331(a):

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.

According to the ILGWU Fund, federal common law governs the outcome of this dispute pursuant to 29 U.S.C. § 1144, with the result that it "arise[s] under" the laws of the United States for jurisdictional purposes.

■ Although at one time the issue was in doubt, *see T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 827–28 (2d Cir.1964) (Friendly, J.), there is no longer any question that the word "laws" within the meaning of § 1331(a) embraces claims founded upon federal common law. In *Illinois v. City of Milwaukee, Wisconsin*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972), the Supreme Court definitively stated:

**5.** Although the parties do not raise the issue, a fiduciary may also bring suit under § 1132(a)(3) to enforce the provisions of ERISA. For reasons similar to those stated in the text, however, we do not believe that jurisdiction over this case can rest on this ground. In our view, Congress contemplated that there be a fiduciary relationship between the fiduciary bringing suit and the fund being sued in all cases brought under § 1132(a)(3).

**6.** Judge Fullam's conclusion—that there is jurisdiction in this case under 28 U.S.C. § 1132(a)(1)(B) because the ILGWU Fund is the "assignee or subrogee" of Mrs. Fazio, *see infra*, at 165 (Fullam, J., concurring)—is appealing because of its simplicity, but we find ourselves unable to subscribe to it on several grounds. First, Congress simply made no provision in § 1132(a)(1)(B) for persons other than partici-

pants and beneficiaries to sue, including persons purporting to sue on their behalf. Second, the intentions of the parties and the district court regarding federal jurisdiction are irrelevant to the determination whether such jurisdiction exists. Third, Mrs. Fazio did not, in fact, make an assignment of her claim to the ILGWU Fund, and it is far from clear that, in litigating this case, the ILGWU Fund pursued only Mrs. Fazio's rights and not also its own interests. Moreover, even if Mrs. Fazio had actually assigned her claim to the IGLWU Fund, we have serious doubts whether she could assign along with her substantive rights her right to sue in federal court. *Cf. McSparran v. Weist*, 402 F.2d 867 (3d Cir.1968) (minor cannot manufacture diversity jurisdiction by appointing out-of-state guardian to prosecute suit).

We see no reason not to give "laws" its natural meaning ..., and therefore conclude that § 1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin.

*Id.* at 100, 92 S.Ct. at 1391.

In *Illinois v. Milwaukee,* the Court was faced with a claim by the State of Illinois that the City of Milwaukee, among others, was causing a public nuisance by dumping some 200 million gallons of raw sewage daily into Lake Michigan. The state requested that the Court, vested with original jurisdiction over suits in which a state is a party, abate the nuisance. The Court declined to exercise its original jurisdiction, but held that jurisdiction existed in the appropriate federal district court pursuant to 28 U.S.C. § 1331. The Court noted that Congress had legislated extensively in the area of interstate water pollution, most specifically through the Federal Water Pollution Control Act, 33 U.S.C. § 1151, and that under this Act only the United States was authorized to bring suits for abatement of water pollution. Nevertheless, the Court held that there exists a federal common law of nuisance, separate from and coexisting with the congressional scheme, which not only governs such disputes but also provides the "laws" under which such actions may arise within the meaning of § 1331.

The Court's holding in *Illinois v. Milwaukee* appears to be applicable to the case at bar. If the ILGWU Fund's claim for declaratory relief "arises under" federal common law, the absence of an express statutory grant of jurisdiction in § 1132 of ERISA is, under the rationale of *Illinois v. Milwaukee,* irrelevant, and this claim may be adjudicated in federal court pursuant to 28 U.S.C. § 1331(a). *See Jersey Central Power & Light Co. v. Local Unions of the International Brotherhood of Electrical Workers,* 508 F.2d 687, 699 (3d Cir.1975) ("inasmuch as the EEOC agreement must be interpreted according to federal substantive [common] law, ... the Company's cause of action joining EEOC 'arises under'

laws of the United States"), *vacated and remanded on other grounds,* 425 U.S. 987, 96 S.Ct. 2196, 48 L.Ed.2d 812 *cert. denied,* 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1976).

Although the Supreme Court's decision in *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), casts some doubt on the applicability of the *Illinois v. Milwaukee* rationale to ERISA cases, the former case is distinguishable. In *Franchise Tax Board,* a state taxing authority brought suit against an ERISA-qualified benefit trust fund in a California court seeking (1) damages for a failure to comply with tax levies issued under state law and (2) a declaration that its authority to levy was not preempted by ERISA. The defendant trust fund removed to federal court. One of the defendant's proffered bases for § 1331 jurisdiction in federal court was that "any state court action which would require the interpretation or application of ERISA to a plan document 'arises under' the laws of the United States." 103 S.Ct. at 2854 (quoting Brief of Appellees 20–21). The Supreme Court agreed with the defendants that the question whether the terms of the plan agreement and the provisions of ERISA would permit the trustees to obey the tax levies was a matter of federal common law. Nevertheless, the Court held that the federal district court lacked jurisdiction over the suit, stating:

Under § 502(a)(3)(B) of ERISA [29 U.S.C. § 1132(a)(3)(B)], a participant, beneficiary, or fiduciary of a plan covered by ERISA may bring a declaratory judgment action in federal court to determine whether the plan's trustees may comply with a state levy on funds held in trust. Nevertheless, [the trust fund's] argument that [the tax board's] second cause of action arises under ERISA fails .... ERISA carefully enumerates the parties entitled to seek relief under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action for a

declaratory judgment on the issues in this case. *A suit for similar relief by some other party does not "arise under" that provision.*

*Id.* at 2855 (emphasis added and footnotes omitted).

The language of the quoted paragraph makes clear, however, that the Court was not presented with, and did not consider, the possibility that the suit need not have arisen under the express statutory provision of ERISA (§ 1132) for it to arise under federal law. In other words, in *Franchise Tax Board*, jurisdiction on the basis of federal common law in accordance with the Court's decision in *Illinois v. Milwaukee* was not considered, and so *Franchise Tax Board* left this question open. Moreover, it appears that two other factors in *Franchise Tax Board* made the Court reluctant to find federal jurisdiction, and these factors are not present here. First, the Court had held in an earlier part of the opinion that, if it were to interpret as a claim arising under § 1331 the tax board's request for a declaration that federal law does not preempt state law, it would violate the "well pleaded complaint rule." 103 S.Ct. at 2848–52; *see infra* at 159 (suggesting that federal jurisdiction over the present action does not violate this rule). Second, the suit involved the ability of a state to tax, which the Court viewed as implicating primarily state concerns. *Id.* 103 S.Ct. at 2855 ("the State's right to enforce its tax levies is not of central concern to the federal stat-ute[;] ... there are many reasons complete-ly unrelated to the provisions of ERISA why the State may or may not be entitled to the relief it seeks").

In addition, the Court's opinion in *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), decided the same day as *Franchise Tax Board*, lends support to the view that the latter case should not be read too broadly. In *Shaw*, the Court entertained a suit brought by employers claiming that certain state laws were preempted by ERISA. Despite the fact that employers are not explicitly listed in § 502 of ERISA (29 U.S.C. § 1132), the court held in a footnote that there was federal jurisdiction over the action. "A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question over which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Id.* at 2899 n. 14.

For the reasons set out above, the rule enunciated in *Illinois v. Milwaukee* should be applicable in ERISA related actions. Thus, if the ILGWU Fund's claim arises under federal common law, there is jurisdiction over this action pursuant to § 1331(a).[7]

---

**7.** Judge Sloviter believes that the Supreme Court's decision in *Franchise Tax Board* foreclosed the possibility that § 1331 jurisdiction on the basis of federal common law may be found in ERISA cases. Her view is that this case arises under ERISA for § 1331 purposes because of the Court's holding in *Shaw*. *See infra*, at 165 (Sloviter, J., concurring). I disagree with her on both points.

In *Franchise Tax Board*, the Court decided that the claims in that case did not arise under ERISA, but—while it noted that ERISA grants courts the power to make federal common law—it simply did not address whether the claims could arise under the federal common law developed pursuant to ERISA. *See* 103 S.Ct. at 2855. Indeed, *Illinois v. Milwaukee* —which stands for the proposition that a case may arise under federal common law even if it does not arise under the related statutory scheme—was never cited by the *Franchise Tax Board* Court.

Regarding the second point, Judge Sloviter's view is that *Franchise Tax Board* (where the Court found no arising under jurisdiction) and *Shaw* (where the Court found arising under jurisdiction) can be distinguished on the "basis of the significant difference between the interests at stake in the underlying suits." At 166. Her view apparently is that a federal court, in determining whether there is § 1331 jurisdiction in an ERISA case, must discern whether the claim in the suit—although admittedly federal in nature—is merely "tangential to enforcement or payment responsibilities" (in which case there is no § 1331 jurisdiction) or is "brought by those responsible for the payment of benefits under an ERISA plan to clarify their obligations to pay ... benefits" (in which case there is § 1331 jurisdiction). *Id.*, at 40–41.

An action arises under federal law "if and only if the complaint seeks a remedy expressly granted by a federal law or if it requires the construction of a federal statute or a distinctive policy of a federal statute requires the application of federal legal principles for its disposition." *Lindy v. Lynn,* 501 F.2d 1367, 1369 (3d Cir.1979); *see also Franchise Tax Board,* 103 S.Ct. at 2846 ("Leading commentators have suggested that for purposes of § 1331 an action 'arises under' federal law 'if in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law.' P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *Hart & Wechsler's The Federal Courts and the Federal System* 889 (2d ed. 1973)...."). An action thus "arises under" federal common law if, *inter alia,* plaintiff's requested relief requires the interpretation and application of federal judge-made law. In order to decide whether this case is cognizable under general federal question jurisdiction, therefore, one must determine whether there exists a federal common law of employee benefit plans that governs this dispute between the ILGWU and Teamsters Funds.

Section 1144(a) of ERISA states, in pertinent part:

the provisions of this subchapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title ...

29 U.S.C. § 1144. In *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), the Court read this provision as indicating that "Congress intended to depart from its previous legislation that 'envisioned the exercise of state regulation power over pension funds' ... and meant to establish pension plan regulation as exclusively a federal concern." *Id.* at 523, 101 S.Ct. at 1906 (citation and footnote omitted). In *Franchise Tax Board,* the Court expanded on this interpretation, stating:

the meaning and enforceability of provisions in [a] trust agreement ... come[ ] within the class of questions for which Congress intended that federal courts create federal common law."

103 S.Ct. at 2855 (footnote omitted). This court has also read the congressional mandate in § 1144(a), along with its legislative history, to "authorize[ ] the evolution of a federal common law of pension plans." *Murphy v. Heppenstall,* 635 F.2d 233 (3d Cir.1980); *see also Barrowclough v. Kidder, Peabody & Co., Inc.,* 752 F.2d 923, 936 (3d Cir.1985).

▮▮ In the wake of the foregoing cases, there can be little doubt that the ILGWU Fund's complaint presents a claim that requires an application of the federal common law of welfare funds authorized by § 1144 of ERISA. In order to determine the validity of the ILGWU Fund's contention that the Teamsters Fund should

Judge Sloviter's view that § 1331 jurisdiction depends on the strength of an admittedly non-frivolous federal claim is supported neither by general § 1331 jurisprudence nor by *Shaw* itself. In footnote 14 of *Shaw,* the Court distinguished that case from *Franchise Tax Board.* The Court pointed out that *Franchise Tax Board* was a case "seeking a declaration that state laws were *not* pre-empted by ERISA." 103 S.Ct. at 2899 n. 14 (emphasis in original). The Court had held in *Franchise Tax Board* that such a claim fails to implicate federal jurisdiction in part because it violates the rule of *Skelly Oil.* *(See supra,* at 156). In the *Shaw* footnote, the Court stated that, in contrast, the claim presented in *Shaw* was for a declaration that state laws *"are* pre-empted by ERISA." 103 S.Ct. at 2899 n. 14 (emphasis in original). This latter claim clearly presents a federal question, the court held, because it directly implicates the Supremacy Clause of the Constitution. The claim in *Shaw* was thus held to be jurisdictional under § 1331, not because of the strength of the plaintiff's ERISA claim, as Judge Sloviter would have it, but because it was a preemption case arising under the Constitution. *Shaw* thus lends support to the view that *Franchise Tax Board* did not foreclose the possibility that a case not falling within the express jurisdictional grant of § 1132 of ERISA may nevertheless arise under federal law for purposes of § 1331 jurisdiction. *See* text, *supra.* But because *Shaw* relied on the Supremacy Clause as the basis for jurisdiction over a pre-emption claim, and there is no pre-emption issue in the case before us, *Shaw* does not provide a specific rationale for § 1331 jurisdiction here.

be liable for the medical expenses incurred by Mrs. Fazio and persons similarly situated, "the meaning and enforceability" of seemingly conflicting provisions of two benefit funds that are covered by ERISA must be interpreted. This certainly presents a matter of federal concern. Resolution of the issue will affect not only the interests of beneficiaries, whose welfare it was the prime purpose of ERISA to protect, but also the interests of benefit trust funds, the solvency of which was a matter of serious congressional concern. Conversely, the policies underlying ERISA will inform our construction of the conflicting policy terms. *See infra* part IIIC. Federal common law thus supplies the rule of decision in this case. Even if this case were in a state court, federal common law would still apply.[8]

■ Because this is an action for a declaratory judgment, an additional line of cases must be considered before one can conclude that this case arises under federal law. It has long been settled that an action does not "arise under" federal law for § 1331 purposes when federal law is merely raised as a defense. *Louisville & Nash-* *ville Railroad Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Moreover, this "well-pleaded complaint rule" cannot be circumvented by invoking what would normally be a defense in a complaint for a declaratory judgment because Congress did not intend the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, to extend the jurisdiction of the federal courts. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). The scope of the *Skelly Oil* holding is unclear, and has been the subject of much debate among courts and scholars. *Compare Franchise Tax Board,* 103 S.Ct. at 2849–53 (action by state tax board for declaration that federal law (ERISA) is not preemptive of state law violates *Skelly Oil* rule) *and Public Service Commission v. Wycoff,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952) (in dictum, Court states that declaratory judgment plaintiff who has only federal defense probably does not have basis for federal jurisdiction) *with Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983) (action by employers for declaration that state law is preempted by ERISA does not run afoul of *Skelly Oil* ) *and Stone & Webster Engi-*

---

8. Section 1144(a) is subject to the following exception:

> [N]othing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

29 U.S.C. § 1144(b)(2)(A). Although counsel have not raised the point, one could argue that state laws regarding "other insurance" provisions are laws "which regulate[ ] insurance" and were therefore intended by Congress to be left in force following the passage of ERISA. If state law were to provide the rule of decision in the present case, a question under federal common law would not be presented and there would be no "arising under" jurisdiction; hence, the suit would have to be dismissed.

The scope of the state law "savings clause" is presently being considered by the Supreme Court. *Attorney General v. Travelers Insurance Co.,* 85 Mass. 578, 433 N.E.2d 1223, *prob. juris noted sub nom. Metropolitan Life Insurance Co. v. Commonwealth of Massachusetts,* — U.S. ——, 105 S.Ct. 320, 83 L.Ed.2d 258 (1984) (argument reported at 53 U.S.L.W. 3659 (March 19, 1985)); *Attorney General v. Travelers Insurance Co.,* 391 Mass. 730, 463 N.E.2d 548, *prob. juris. noted sub nom. Travelers Insurance Co. v. Commonwealth of Massachusetts,* — U.S. ——, 105 S.Ct. 898, 83 L.Ed.2d 914 (1985) (same). The savings clause appears to be inapplicable to this case, however, because (1) judge-made rules regarding interpretation of insurance contracts are not the kind of state insurance regulations that the Congress intended to preserve; (2) to the extent that state insurance laws directly conflict with ERISA policies, the correct interpretation of the interplay between § 1144(a) and § 1144(2)(A) is that such state laws cannot stand (*see Attorney General v. Travelers Insurance Co.,* 391 Mass. at 732, 463 N.E.2d at 550 (the savings clause "save[s] from preemption only those state laws that do not conflict with the policies or operation of ERISA.")); and (3) presented in this case is the question of what ERISA *trustees* may do regarding coordination with other ERISA plans, and thus the determination that this is a federal question does not preempt the state common law of "other insurance" provisions so far as that law regulates insurance (*see Wadsworth v. Whaland,* 562 F.2d 70, 77 (1st Cir.1977) (§ 1144(b)(2)(B) of ERISA, which states that a benefit plan cannot be deemed an insurance company or insurer for purposes of state insurance law, means that a state may not subject such a plan to its general insurance laws)).

*neering Corp. v. Ilsey,* 690 F.2d 323, 326–27 (2d Cir.1982), *aff'd mem.,* 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983) (same); *see generally* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2767 (2d ed. 1983).

Regardless of the exact scope of *Skelly Oil,* however, there is no question that it does not bar the present action. This is not a case in which the declaratory judgment plaintiff seeks to obtain federal jurisdiction over his suit by raising a federal defense. Rather, the ILGWU Fund's complaint directly invokes federal law in an effort to obtain affirmative relief, and indeed would have implicated federal common law if it had been fashioned as an action for an order enjoining the Teamsters Fund from continuing to refuse to pay beneficiaries in the position of Mrs. Fazio, or as an action for damages to recover monies paid to Mrs. Fazio.

Finally, finding jurisdiction in cases such as the one at bar based on the rule of *Illinois v. Milwaukee* would expand the scope of federal jurisdiction over ERISA-related actions only minimally because the vast majority of ERISA cases involving entitlement to benefits will fall under the express jurisdictional provisions of the statute. Indeed, the instant case would have been in federal court without question had not the district court, out of sympathy for Mrs. Fazio, suggested that the parties pay her and reinstitute suit. For the odd case that does not fall under § 1132, a finding of federal jurisdiction promotes certainty and uniformity by having federal courts decide issues of federal common law.

In sum, this suit is cognizable in federal court because it arises under the federal common law of ERISA related employee benefit plans, which is part of the laws of the United States for the purposes of federal question jurisdiction under 28 U.S.C. § 1331.

## III. *LIABILITY OF THE ILGWU AND TEAMSTERS FUNDS TO MRS. FAZIO*

### A. *Generally Applicable Principles*

Although this case appears to present an issue of first impression in the context of the federal common law of benefit plans covered by ERISA, the conflict between "other insurance" provisions in policies that both arguably cover an insured is a common occurrence in the insurance industry and is the subject of extensive state common law jurisprudence and treatise discussion. The issue has most commonly been presented to the courts in connection with automobile insurance policies, but disputes between health insurers have recently begun to arise. *See, e.g., Starks v. Hospital Service Plan of New Jersey,* 182 N.J.Super. 342, 440 A.2d 1353 (App.Div. 1981). We will begin our analysis by setting out some basic propositions of the relevant insurance law and determining to what extent and in what manner they are applicable in the ERISA setting.

The general common law rule is that "the liability of insurers under overlapping coverage policies is to be governed by the intent of the insurers as manifested by the terms of the policies which they have issued." 16 *Couch on Insurance 2d* § 62:44, at 480 (rev'd ed. 1983). "[W]here such contractual provisions are not inconsistent with public policy, they will be enforced." 8A Appleman, *Insurance Law and Practice* § 4907.65, at 367. Under state common law, then, "the judicial task is first to determine from the contracts themselves what obligations the respective obligors intended to assume and then to determine whether these intentions are compatible not only each with the other but also with the insured's rights and expectations and with the controlling demands of public policy." *Starks,* 182 N.J.Super. at 351, 440 A.2d at 1358. We believe that this mode of analysis is fundamentally sound. In the ERISA context, courts should give effect to the intent of the trustees of the competing benefit plans, as evidenced by their incorporation of "other insurance" provisions, if the provisions are compatible, unless doing so results in the enforcement of a provision that conflicts with the language or policies of ERISA. We turn first to an analysis of the "other insurance" provisions of the two plans.

### B. Interpreting the Competing "Other Insurance" Provisions

Both insurance contracts at issue in the case at bar contain "other insurance" provisions. As a general matter, "other insurance" clauses fall into three categories: pro rata, excess, and escape (or no-liability). Only the latter two types of clauses are of importance here. An excess clause purports to provide an insured with only secondary (or excess) protection when coverage from another insurance policy is available. An escape clause, on the other hand, provides for an outright exception to coverage if the insured is covered by another insurance policy. See Insurance Company of North America v. Continental Casualty Company, 575 F.2d 1070, 1072 (3d Cir.1978); 16 Couch on Insurance 2d §§ 62:48, 63:85.

We are presented here with a conflict between a type of excess clause, called a coordination of benefits clause, and an escape clause. The relevant provision in the Teamsters plan, set out in the margin,[9] is a coordination of benefits clause: rather than indicating that the fund intends to be an excess insurer in all cases in which a participant or beneficiary is covered by other insurance, it contains a set of rules setting out when the fund intends to be a primary insurer and when it intends to be only secondary to another insurer. See Starks, 182 N.J.Super. at 344–45, 440 A.2d at 1354 (discussing coordination of benefits clauses). Regarding persons in Mrs. Fazio's position, the Teamsters plan's coordination of benefits provision states that if "an individual is covered" by another group insurance plan, and that plan covers "the patient directly, rather than as an employee's dependent," that plan is the primary insurer and the Teamsters Fund is the excess insurer. Thus, if Mrs. Fazio is covered by the ILGWU plan, the Teamsters plan intends to provide her with only excess coverage.

The ILGWU plan also has a coordination of benefits provision, which applies to conflicts with all insurance policies except group insurance coverage provided by another employer.[10] In this latter case, which

9. The Teamsters "Coordination of Benefits" clause provides:

Our Group Insurance Plan contains a non-profit provision coordinating it with other plans under which an individual is covered so that the total benefits available will not exceed 100% of the allowable expenses.

An "allowable expense" is any necessary, reasonable and customary expense covered, at least in part, by one of the plans.

"Plans" means these types of medical and dental care benefits: (a) coverage (other than Medicare) under a governmental program or provided or required by statute, including no fault coverage to the extent required in policies or contracts by a motor vehicle insurance statute or similar legislation, and (b) group insurance or other coverage for a group of individuals, including student coverage obtained through an educational institution above the high school level.

When a claim is made the primary plan pays its benefits without regard to any other plans. The secondary plans adjust their benefits so that the total benefits available will not exceed the allowable expenses. No plan pays more than it would without the coordination provision. A plan without a coordinating provision is always the primary plan. If all plans have such a provision: (1) the plan covering the patient directly, rather than as an employ-

ee's dependent, is primary and the others secondary, (2) if a child is covered under both parents' plans, the father's is primary, (3) if neither (1) nor (2) applies, the plan covering the patient longest is primary.

When ours is the secondary plan and its payment is reduced to consider the primary plan's benefits, a record is kept of the reduction. This amount will be used to increase our Group Insurance Plan's payments on the patient's later claims in the same calendar year—to the extent there are allowable expenses that would not otherwise be fully paid by our Group Insurance Plan and the others. Id. at 88a.

10. The ILGWU Fund Coordination of Benefits clause states in full:

**What happens if you are covered for a type of benefit under this Plan and you also are covered for the same benefits under another plan.**

(1) Benefits under the Plan shall be coordinated with those provided by other plans so that the total amount of benefits available to you or your dependent will not exceed those that would be provided by the plan that would pay the larger benefit for any type of coverage.

(2) For purpose of this section "plans" means the following types of programs, poli-

is relevant here, a clause entitled "Exception to Eligibility" applies and supersedes the coordination of benefits approach.[11] This "Exception to Eligibility" provision is an escape clause: it indicates that the Fund intends to escape *all* liability whenever a participant or beneficiary is covered by a spouse's group insurer if less than 50% of the cost of such coverage is paid for by the insured.[12] Thus, if Mrs. Fazio is covered by the Teamsters plan, the ILGWU plan intends to provide her with no coverage at all.

The foregoing analysis of the two "other insurance" provisions reveals that they are plainly incompatible. The Teamsters excess clause purports to defer primary liability for Mrs. Fazio's bills to the ILGWU plan if the ILGWU plan provides Mrs. Fazio with coverage. Under the ILGWU escape clause, however, the ILGWU plan provides coverage to Mrs. Fazio only if the Teamsters plan does not. In other words, in light of the two "other insurance" provi-

sions, each plan provides primary coverage unless the other plan provides primary coverage. Under such circumstances, discerning from the language of the plans and the intent of the trustees which plan provides coverage given the existence of both plans is simply impossible.

Construing the "other insurance" provisions and determining their compatibility, however, is only the first step of a two step analysis. As we stated in part IIIA, *supra*, an "other insurance" clause is enforceable only if it is consonant with the provisions and policies of ERISA. The Teamsters Fund contends that the ILGWU escape clause violates the ERISA mandate against arbitrary and capricious conduct on behalf of fund trustees. If so, the ILGWU clause would be unenforceable, the incompatibility between the plans would disappear, and the ILGWU Fund would be Mrs. Fazio's primary insurer. We thus proceed to an examination of the ILGWU escape clause.[13]

---

cies and organizations that provide medical, hospitalization, surgical and disability benefits:

(a) government programs (including medicare, medicaid, worker's compensation, and occupational disease compensation); (b) group insurance programs, including those for students through educational institutions; and (c) no-fault automobile insurance.

(3) If more than one plan covers a particular type of expense, benefits shall be paid by the primary plan until the coverage of you or your dependent under that plan is exhausted. The secondary plan shall pay as benefits the difference between what has already been paid by the primary plan and what it would have paid had it been the primary plan. To determine which plan is the primary plan, the following rules shall apply.

(a) Medicare shall be primary;

(b) No-fault automobile insurance shall be primary;

(c) A plan without coordination of benefits provision shall be primary;

(d) In other situations, the following rules shall determine which is primary:

(i) the plan covering the patient directly, rather than as an employee's dependent, is primary and the others secondary.

(ii) if a child is covered under both parents' plans, the father's plan is primary.

(iii) if neither (i) nor (ii) apply, the plan covering the patient longest is primary.

Appellant's Appendix at 53a–54a.

**11.** The "Exception to Eligibility clause is set out in part IB, *supra*. We repeat it here for ease of reference:

Exception to Eligibility—You are not eligible for hospital, medical-surgical, or Major Medical benefits under this plan if there exists at your spouse's place of employment a group plan which provides for family coverage of these types of benefits so long as 50% or more of the cost of such family coverage is paid for by other than you or a member of your family.

**12.** The parties stipulated to the fact that the entire cost of Mr. Fazio's coverage is paid for by his employer. Thus, Mr. Fazio meets the requirement of the ILGWU "Exception to Eligibility" clause that 50% or more of the cost of family coverage is paid by someone other than the spouse himself.

**13.** Because we decide that the ILGWU escape clause is indeed unenforceable, *see infra* part IIIC, we need not decide in this case what to do in the face of two enforceable and incompatible clauses. We note, however, that other courts faced with incompatible "other insurance" clauses have frequently declared the clauses to be "mutually repugnant" and have held both insurers primarily liable for the insured's loss on a pro-rata basis. *See* 8A Appleman, Insurance Law and Practice § 4910, at 477 (and cases cited therein).

## C. The Provisions and Policies of ERISA

Because state courts have had so much experience in this area, it is instructive and useful to begin our analysis by examining the treatment of escape clauses under state common law. Many state courts faced with a conflict between an excess and an escape clause have held the excess clause to be prevailing, reasoning that since a policy with an excess clause does not cover the insured's primary loss, the policy with the escape clause must be the primary insurer. *See e.g., Grasberger v. Liebert & Obert, Inc.,* 335 Pa. 491, 6 A.2d 925 (1939); Annot., 46 A.L.R.2d 1163, 1165–67 (1956).[14] Although these courts have purported to rely on contract analysis, it appears that policy considerations play a large role in their refusal to give effect to an escape clause. *See, e.g., Insurance Company of North America,* 575 F.2d at 1073. Some state courts have explicitly refused to enforce escape clauses on grounds of "public policy." *See Rocky Mountain Fire & Casualty Co. v. Allstate Insurance Co.,* 107 Ariz. 227, 485 P.2d 552 (1971); 8A Appleman, *Insurance Law and Practice* § 4910. In short, the majority rule is that escape clauses are disfavored and are not enforced as against excess clauses under state common law. *See id.* at 1073 & n. 1; 16 *Couch on Insurance 2d* § 62:76. Underlying the judicial hostility toward escape clauses appears to be the sentiment that insureds who reasonably expect a certain level of insurance coverage should not be unexpectedly deprived of such coverage when one insurer attempts to avoid liability by shifting it to another whose policy terms may be much less favorable to the insured. *See, e.g., Insurance Company of North America,* 575 F.2d at 1074 n. 6 ("The large coverages available under both policies here tends to obscure the very real interest of the insured in most situations to secure the benefit of both policies.")

The question is thus presented: should the majority rule of the state common law, which holds that escape clauses are unenforceable, be applied to ERISA-covered benefit plans? In order to answer this question, we start with an examination of the ERISA statute.

ERISA is a comprehensive statutory scheme designed to protect employees enrolled in pension and benefit plans. Under ERISA, the responsibility for administering a plan in the best interests of its participants and beneficiaries rests with the plan trustees, who must act in accordance with a standard of fiduciary conduct. The fiduciary duties of plan trustees are set out in the statute as follows, in pertinent part:

a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan ...

29 U.S.C. § 1104.

This court has held that a decision of trustees denying benefits to participants or beneficiaries meets the requirements of § 1104 unless that decision is arbitrary and

---

We do not undertake an examination of the Teamsters COB provision because the ILGWU Fund has not challenged its validity. Moreover, nothing on the face of the provision indicates that the Teamsters trustees violated ERISA in their decision to include it in the Teamsters plan.

14. As our discussion in part IIIB makes clear, we doubt that a court can determine solely from contract principles which of two policies, one containing an excess clause and the other an escape clause, successfully defers primary liability. Courts that hold the excess clause to be prevailing based on the reasoning set out in the text assume their conclusion when they state as a premise that the policy with the excess clause does not cover the insured's primary loss. The policy with the excess clause does not cover the insured's primary loss only if the policy with the escape clause does. But the escape clause, of course, purports to deny coverage to the insured in the presence of the other policy. It may be that in terms solely of contract principles the proper conclusion when faced with a conflict between two such clauses is to hold that they are incompatible. *But see* text *infra* (enforcing excess clause on ERISA policy grounds).

capricious. *See Struble v. New Jersey Brewery Employees' Welfare Trust Fund,* 732 F.2d 325, 333–34 (3d Cir.1984). As we recently stated in *Edwards v. Wilkes-Barre Publishing Co. Pension Trust,* 757 F.2d 52 (3d Cir.1985):

> When the amount of benefits to which a distinct group of beneficiaries is entitled [is at issue], pension trustees must necessarily strike a balance between the interests of the beneficiaries who are in this group and beneficiaries who are not.... Because the trustees in these circumstances must reconcile competing interests of different beneficiaries, the trustees' choice cannot be said to violate their fiduciary duty unless it is arbitrary and capricious.

*Id.,* slip op at 56. An "other insurance" clause in a ERISA-covered benefit plan is therefore enforceable unless it reflects an arbitrary and capricious judgment by the plan's trustees.

We believe that the incorporation of escape clauses in benefit plans reflects such impermissible conduct. A major impetus for Congress's enactment of ERISA was the alarming frequency with which employees who had been promised welfare or retirement benefits by employers were deprived of anticipated benefits because of the inequitable character or financial instability of their benefit plan. As Congress stated in ERISA's declaration of policy:

> The Congress finds that ... the continued well being and security of millions of employees and their dependents are directly affected by [employee benefit plans]: ... that owing to the lack of employee information and adequate safeguards concerning their operation, it is desirable in the interests of employees and their beneficiaries, and to provide for the general welfare and the free flow of commerce, that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans; ... that owing to the inadequacy of current minimum standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered; that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits; and that it is therefore desirable in the interests of employees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce, that minimum standards be provided assuring the equitable character of such plans and their financial soundness.

29 U.S.C. § 1001(a).

Thus, one very important policy underlying ERISA is that employees enrolled in a benefit plan should not be deprived of compensation that they reasonably anticipate under the plan's purported coverage.[15] Escape clauses, however, risk just such a result. An escape clause, such as the "Exception to Eligibility" clause in the ILGWU plan, does not contain any requirement that the coverage provided by the other plan be comparable to the coverage provided by the escaping plan before the latter plan will defer liability. In addition, unlike plans with excess clauses, a plan with an escape clause does not provide participants who receive less in benefits from the other plan with the opportunity to return to the first plan for the difference. As a result, a participant of a plan with an escape clause, who thinks that he is covered by that plan and who expects to recover medical expenses in accordance with the terms of that plan, automatically loses this coverage in the presence of another insurance plan, even if the benefits he is entitled to receive under the other plan are much less favorable than those of his own. In our view, trustees who incorporate in a plan a provision that has the potential to harm participants in this way have indeed acted in an arbitrary and capricious manner.[16]

---

**15.** This is, of course, the same policy that underlies the judicial hostility against escape clauses outside of the ERISA context. *See supra,* at 162–163.

**16.** We recognize that trustees who incorporate

Accordingly, we hold that the escape clauses in ERISA covered employee benefit plans are unenforceable as a matter of law.[17] In the absence of its escape clause, the ILGWU plan is the primary insurer of Mrs. Fazio's medical expenses under its own terms and the terms of the Teamsters plan. We therefore reverse the district court's judgment in favor of the ILGWU Fund.[18]

## IV. *CONCLUSION*

In sum, we hold: (1) that the district court had no jurisdiction over this suit under the express grant of ERISA, 29 U.S.C. § 1132; (2) that the district court instead had general federal question jurisdiction pursuant to 28 U.S.C. § 1331(a); (3) that under the aegis of ERISA, an "other insurance" provision is enforceable unless it rep-

resents arbitrary and capricious conduct by the plan trustees, in violation of their fiduciary duties set forth in 29 U.S.C. § 1104; (6) that the incorporation of an escape clause in an employee benefit plan reflects arbitrary and capricious conduct; and (7) that the ILGWU Fund's "Exception to Eligibility" clause must therefore fail. Accordingly, the judgment of the district court will be reversed and the case remanded with directions to enter judgment in favor of the Teamsters Fund.

SLOVITER, Circuit Judge, concurring.

I fully join all portions of the opinion of the court, except that I do not join in Part II.B. which represents only Judge Becker's view.

I believe that Judge Fullam's view that there is jurisdiction under ERISA would be

---

escape clauses into their plans may, by systematically deferring liability to other plans, lower the costs of providing coverage to participants and beneficiaries and use the money saved to provide better coverage overall. In this critical area, however, trustees may not, consistent with their fiduciary responsibilities, sacrifice the welfare of some participants—who find that they are entitled only to the inferior coverage provided by another plan—in order to benefit other participants and beneficiaries.

We also acknowledge that a participant or beneficiary who carefully reads and fully understands the escape clause in his or her benefit plan could protect himself or herself by declining to participate in a plan with inferior coverage. We believe, however, that given the complexity of "other insurance" law, the reality is that most participants will not make informed choices but, like Mrs. Fazio, will instead be surprised when their plan refuses to pay for costs apparently within its coverage. For this reason, it is appropriate to require the trustees to look out for the welfare of their insureds by not making such choices necessary.

**17.** We are aware that we have at our disposal less drastic remedies than the total invalidation of escape clauses. We could, for instance, hold that such clauses are unenforceable only to the extent that the complaining participant is actually harmed, i.e., where the benefits provided by the other plan are in fact less than the benefits provided by the plan with the escape clause. If we employed such a remedy in this case, the result would be different because the record indicates that the Teamsters plan would provide Mrs. Fazio with benefits at least equivalent to those available to her under the ILGWU plan.

We decline to fashion a lesser remedy, however, for two reasons. First, we are concerned that even a qualified endorsement of escape clauses might encourage benefit plans with excess or coordination of benefits clauses to replace such clauses with those of the escape variety in order to "fight fire with fire." A war between plans would cause uncertainty in the industry and could potentially catch participants and beneficiaries in the crossfire. Second, we think it unrealistic to believe that this opinion would put participants on notice that, in the event that their plan attempts to shift liability to another plan that provides lesser benefits, the participant has the right to return to the escaping plan for the difference. *Cf. Agro v. Joint Plumbing Industry Board*, 623 F.2d 207, 211 (2d Cir. 1980) (imposing duty on plan trustees to provide actual notice of plan amendments); *Kosty v. Lewis*, 319 F.2d 744, 749 (D.C.Cir. 1963) (same). *But cf. Michota v. Anheuser-Busch, Inc.*, 755 F.2d 330, 335–36 (3d Cir.1985) (because of nature of labor relations, incorporation of plan amendment in collective bargaining agreement constitutes constructive notice satisfying trustees' duties). Thus, we believe that the better course of action is to put the onus on trustees of plans with escape clauses to rewrite the plans and give their participants proper notice thereof.

**18.** Because we decide that escape clauses are unenforceable in ERISA covered benefits plans as a matter of law, we need not address the Teamsters Fund's claims that the ILGWU trustees have violated their fiduciary duties and § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)–5, because the ILGWU clause discriminates on the basis of gender and marital status.

a reasonable construction of that statute had Congress not drafted ERISA's jurisdictional provisions with particular precision. Since there is no language in 29 U.S.C. § 1132 into which this action falls, I agree with Judge Becker that we must look instead to 28 U.S.C. § 1331. I find an adequate basis for jurisdiction under that section, but not on the expansive view of "arising under" federal common law.

Judge Becker's broad view that merely because federal common law supplies the rule of decision, there is "arising under" jurisdiction under 28 U.S.C. § 1331 was before the Supreme Court and expressly rejected in *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The Court stated that, "CLVT [the state tax board] argues by analogy that ERISA ... was meant to create a body of federal common law, and that 'any state court action which would require the interpretation or application of ERISA to a plan document 'arises under' the laws of the United States'". *Id.* 103 S.Ct. at 2854. The Court concluded, however, that this did not suffice to create federal subject matter jurisdiction.

Nonetheless, the Court did not preclude use of "arising under" jurisdiction for certain types of ERISA actions. It not only analyzed fully the possible bases for applying such jurisdiction to the claims of the state tax board, but suggested that a welfare benefit trust fund could obtain federal jurisdiction to seek an an injunction "under ERISA against application to it of state regulations that require acts inconsistent with ERISA" even in the absence of an express grant of jurisdiction under 29 U.S.C. § 1132. 103 S.Ct. at 2852 & n. 20.

The analysis of § 1331 "arising under" jurisdiction that I believe fits this case is governed by the Supreme Court's holding in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d

490 (1983). There the Court held that § 1331 jurisdiction extended to suits brought by employers with ERISA covered plans seeking to invalidate the New York Disability Benefits Law on the grounds of preemption.[1] Although employers are not included among the plaintiffs enumerated in ERISA in 29 U.S.C. § 1132, the Court held that 28 U.S.C. § 1331 supplied jurisdiction since it was a suit in which "companies subject to ERISA regulation" seek "injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute." *Id.* 103 S.Ct. at 2899 n. 14.

Since *Shaw* and *Franchise Tax Board* were decided the same day, they must be read together. In *Franchise Tax Board*, the Court held that there was no federal jurisdiction over a state tax board's suit to declare that its right to levy on a welfare trust fund was not preempted by ERISA. It summarized its conclusion as follows:

> We hold that a suit by state tax authorities both to enforce its levies against funds held in trust pursuant to an ERISA-covered employee benefit plan, and to declare the validity of the levies notwithstanding ERISA, is neither a creature of ERISA itself nor a suit of which the federal courts will take jurisdiction because it turns on a question of federal law.

103 S.Ct. at 2856. However, the Court did not retract from and indeed reiterated the well-established principle that

> Congress has given the lower federal courts jurisdiction to hear ... those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.

*Id.*

The Court made a distinction, for jurisdictional purposes, between the state tax

---

1. In a related case that was before the Court of Appeals but that was not appealed to the Supreme Court in *Shaw,* the court exercised jurisdiction over the same claim brought by a wel-

fare trust fund established under a collective bargaining agreement. *United Federation of Teachers Welfare Fund v. Kramarsky,* 650 F.2d 1310 (2d Cir.1981).

authority and those "[p]arties subject to conflicting state and federal regulatory schemes [who] have a clear interest in sorting out the scope of each government's authority, especially where they face a threat of liability if the application of federal law is not quickly made clear." *Id.* at 2852 n. 23. The Court described its effort as one of "common-sense accommodation of judgment to kaleidoscopic situations ... a selective process which picks the substantial causes out of the web and lays the other ones aside." *Id.* at 2852 (quoting *Gully v. First National Bank,* 299 U.S. 109, 117–18, 57 S.Ct. 96, 99–100, 81 L.Ed. 70 (1936)).

The Court's holdings in *Shaw* and *Franchise Tax Board* may be explained on the basis of the significant difference between the interests at stake in the underlying suits. In *Shaw,* the plaintiffs were subject to regulation under ERISA and responsible for the payment of benefits to beneficiaries. Thus, they were held able to maintain a federal action to clarify their responsibilities by challenging state action that impinged on their enforcement or payment responsibilities. In contrast, in *Franchise Tax Board* the claims of the state tax board were tangential to enforcement or payment responsibilities.

It was *Franchise Tax Board* that governed our holding in *New Jersey State AFL–CIO v. New Jersey,* 747 F.2d 891 (3d Cir.1984), that there was no federal jurisdiction over a suit by a labor union challenging four state statutes as preempted by ERISA when the union neither administered the plan nor acted as the representative of beneficiaries' rights under any current plan. Its vague substantive claim was merely that the cost of dental insurance plans would increase under the state statutes. Since the union was not among the plaintiffs expressly enumerated in ERISA, and examination of its claim did not disclose that its suit "arose under" federal law, we held that it, like the state in *Franchise Tax Board,* could not sue on this claim in federal court.

In contrast, plaintiffs here, the ILGWU fund and ILGWU trustee Sol Hoffman, are comparable to those in *Shaw* since they are directly subject to the provisions of ERISA and responsible for the payment of benefits under the terms of their plan. This suit was originally brought by a participant and beneficiary of the plan to recover benefits due her, a claim that expressly falls within 29 U.S.C. § 1132(a)(1)(B). The mere fact that, at the district court's urging, the ILGWU fund agreed to pay Mrs. Fazio's claim and sue the Teamsters fund to recover the benefits has not fundamentally changed the character of the action.

Because this is an action brought by those responsible for the payment of benefits under an ERISA plan to clarify their obligations to pay those benefits to certain classes of participants and beneficiaries and to thereby resolve conflicting claims as to their payment responsibilities, I believe the action "arises under" a federal law (ERISA) within the meaning of 28 U.S.C. § 1331.

FULLAM, District Judge, concurring:

The jurisdictional issues which have engaged the attention of my colleagues—the extent to which "federal question" jurisdiction under 28 U.S.C. § 1331 may be predicated upon federal common law when the federal common law relied upon bears some relation to a federal statute which is interpreted as not authorizing suit in federal court—are interesting but, in my view, need not be addressed in this case. Mrs. Fazio is a participant in the ILGWU plan and a beneficiary of the Teamsters plan, and therefore, as my colleagues agree, had the right to sue both plans in federal court to recover benefits and to enforce compliance with ERISA. She did so. Each of the defendant plans had the right, in that action, to attempt to shift liability to the other, whether by way of contribution, indemnity, or declaratory judgment. In short, there plainly was federal jurisdiction over all aspects of the controversy, under

the express jurisdictional grant of 29 U.S.C. § 1132(a)(1)(B).

The question is whether the procedures chosen by the district court to resolve the controversy deprived that court of federal jurisdiction. Plainly, neither the district court nor any of the litigants intended to achieve that result, or thought they had done so. Plainly, too, if the action had proceeded as on cross-claims by the two defendants in the Fazio lawsuit, federal jurisdiction would have persisted. In my view, it is appropriate to regard the matter as if that is precisely what did occur. *Cf.* 28 U.S.C. § 1653. The reality is that everyone intended that the ILGWU plan be subrogated to Mrs. Fazio's rights against the Teamsters' plan. I do not believe this Court should be deterred from deciding the important federal issues presented in this litigation by the procedural formalities unfortunately, and inadvertently, pursued in the district court. This Court should not be so tyrannized by district court docket numbers.

I respectfully suggest that there is a live, justiciable, controversy in this case *only because* of Mrs. Fazio's claims against the Teamsters fund. I do not believe a labor union, such as ILGWU, or the trustee of its plan, would have standing to seek a judgment declaring that some other pension plan was violating ERISA, unless such plaintiffs could demonstrate a particularized, concrete, financial impact upon the plaintiff plan. It is only because the ILGWU claimants are attempting to recoup from the Teamsters plan the amounts paid to Mrs. Fazio that there is a justiciable controversy in this case. Where the entitlements of an identifiable beneficiary are at issue, the federal courts are open to litigation under 28 U.S.C. § 1132(a)(1)(B), I suggest, regardless of whether the action is maintained in the name of the beneficiary, or in the name of a personal representative, assignee or subrogee.