814 F.2d 79
 8 Employee Benefits Ca 1773
 DUMAC FORESTRY SERVICES, INC., Plaintiff-Appellee,
v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, National
Electrical Benefit Fund, Ralph A. Leigon and
Robert L. Higgins, Individually, and as
Trustees of N.E.B.F.,
Defendants-Appellants.
 No. 424, Docket No. 86-7488.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 3, 1986.
Decided March 12, 1987.
 
 Willis D. Birch, Binghamton, N.Y., for plaintiff-appellee.
 Jules L. Smith, Syracuse, N.Y. (Donald D. Oliver, Blitman & King, Syracuse, N.Y., of counsel), for defendants-appellants.
 Before NEWMAN and MINER, Circuit Judges.*
 MINER, Circuit Judge.
 
 
 1
 Defendants-appellants appeal from a summary judgment entered in the United States District Court for the Northern District of New York (McCurn, J.) in favor of plaintiff-appellee Dumac Forestry Services. Dumac, an employer required to make contributions on behalf of its employees to defendant-appellant National Electrical Benefit Fund, brought suit to recover overpayments erroneously made to the pension fund outside the fund's three-year refund limitation rule. Dumac also alleged pendent state law claims based on fraud and negligence. The district judge permitted Dumac to reduce its future payments to the fund by the amount of overpayments made outside the three-year refund period. The district judge rejected Dumac's claims for interest on the overpayments, and dismissed the pendent state law claims. The district court's opinion is reported at 637 F.Supp. 529 (N.D.N.Y.1986). Defendants appeal the district court's allowance of offsets against Dumac's future payments, and Dumac cross-appeals the district court's disallowance of interest. For the reasons set forth below, we affirm the denial of appellee's claim for interest, and we reverse and remand as to the district court's summary judgment in favor of Dumac.
 
 BACKGROUND
 
 2
 Plaintiff-appellee Dumac Forestry Services is an employer bound by a series of collective bargaining agreements between the New York State Tree Trimming and Line Clearance Contractors and Local Union No. 1249, International Brotherhood of Electrical Workers. Under the labor contracts, Dumac was required to make contributions on behalf of its employees to defendant-appellant National Electrical Benefit Fund ("NEBF" or "Fund") in an amount equal to one percent of its gross monthly payroll. NEBF is a multiemployer pension benefit plan within the purview of the Employee Retirement Income Security Act, 29 U.S.C. Sec. 1001 et seq. (1982) ("ERISA"). The NEBF trustees have adopted a policy limiting refunds of employer overpayments to contributions made within three years of NEBF's knowledge of the overpayments.
 
 
 3
 During the five-year period from October of 1977 through June of 1982, Dumac erroneously made contributions to the fund amounting to three percent of its payroll. These overpayments were attributable partially to the fact that Dumac's bookkeeper, who began employment with the company in 1977, was unaware of the actual terms of the labor contracts, and partially to the forms provided Dumac by NEBF to accompany the company's contributions. The front of the NEBF forms contained instructions for contributions amounting to three percent of payroll, while the reverse side contained instructions directing use of the accurate one percent contribution rate.
 
 
 4
 The overpayments were discovered during a routine audit conducted by NEBF in July 1982, and Dumac was promptly notified of the erroneous payments. Dumac subsequently demanded reimbursement for all overpayments. On November 9, 1982, NEBF refunded $48,893.44--an amount representing the overpayments made during the three-year period from July 1979 through June 1982. Pursuant to its three-year refund limitation policy, NEBF refused to return $20,733.11--the amount of overpayments Dumac had made outside the three-year period.
 
 
 5
 In October of 1983 Dumac instituted this action in the United States District Court for the Northern District of New York to recover the remaining overpayments with interest, as well as legal fees and punitive damages. Dumac's complaint also included pendent state common law claims based on fraud and negligence. The district judge dismissed the pendent claims, finding that ERISA has preempted state law. Judge McCurn noted that, as to Dumac's federal claims, pension fund trustees' actions are to be reviewed under an arbitrary and capricious standard. Judge McCurn denied NEBF's motion for summary judgment because he did not find "that the trustees' policy limiting refunds to three years is, as a matter of law, reasonable and not arbitrary." The district judge also denied Dumac's summary judgment motion for a refund because Dumac "failed to show that the trustees' policy is, as a matter of law, arbitrary." Judge McCurn determined, however, that general equitable principles were applicable to the dispute and, citing the absence of any evidence that the financial stability of the fund would be jeopardized, granted Dumac's motion for summary judgment and permitted Dumac to charge the amount of its overpayments as offsets against its future obligations to the fund. Judge McCurn also denied Dumac's claims for interest on the overpayments, legal fees, and punitive damages.
 
 
 6
 Before us are NEBF's challenge to the district judge's determination that Dumac could recover the overpayments made beyond the three-year period, as well as Dumac's cross-appeal from the district judge's refusal to award interest.
 
 DISCUSSION
 
 7
 Section 403(c)(1) of ERISA sets forth the general rule that "the assets of a [multiemployer pension] plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries...." 29 U.S.C. Sec. 1103(c)(1) (1982). This sweeping prohibition is tempered by a number of limited exceptions, one of which is pertinent to this appeal:
 
 
 8
 (2)(A) In the case of a contribution, or a payment of withdrawal liability ...
 
 
 9
 ....
 
 
 10
 (ii) made by an employer to a multiemployer plan by a mistake of fact or law ..., paragraph (1) shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake.
 
 
 11
 29 U.S.C. Sec. 1103(c)(2)(A)(ii) (1982). Section 1103(c)(2)(A) was amended by Congress in 1980. Multiemployer Pension Plan Amendments Act of 1980, Pub.L. No. 96-364, 94 Stat. 1296 (1980). By eliminating some of the prior restrictions on recovery by employers of mistaken contributions, the amendments made the statute more permissive; mistakes of law were added as a basis for refunds, and the former one-year refund limitation period for overpayments was eliminated. Also as part of the 1980 amendments to section 1103(c), Congress provided that
 
 
 12
 [t]he amendment made by this section shall take effect on January 1, 1975, except that in the case of contributions received by a collectively bargained plan maintained by more than one employer before the date of enactment of this Act [Sept. 26, 1980], any determination by the plan administrator that any such contribution was made by mistake of fact or law before such date shall be deemed to have been made on such date of enactment.
 
 
 13
 Pub.L. No. 96-364, tit. IV, Sec. 410(c), 94 Stat. 1296, 1308 (1980). Because Dumac's overpayments were made under a mistake of fact and because they were made and discovered after January 1, 1975, Dumac's claim falls within the section 1103(c)(2)(A)(ii) exception to ERISA's prohibition against employer recovery of pension fund assets.
 
 
 14
 Dumac contends that because section 1103(c)(2)(A)(ii) does not bar recovery of overpayments, general equitable principles compel our affirmance of Judge McCurn's award of an offset. See, e.g., Award Service, Inc. v. Northern California Retail Clerks, 763 F.2d 1066, 1069 (9th Cir.1985) (equitable principles of restitution govern employer's claim for refund), cert. denied, --- U.S. ----, 106 S.Ct. 850, 88 L.Ed.2d 490 (1986); Chase v. Trustees of W. Conference of Teamsters Pension Trust Fund, 753 F.2d 744, 749-50 (9th Cir.1985) (same); Peckham v. Board of Trustees of the Int'l Bhd. of Painters & Allied Trades Union, 719 F.2d 1063, 1066 (10th Cir.) (same), modified and aff'd on rehearing, 724 F.2d 100 (10th Cir.1983); Teamsters Local 639--Employers Health Trust v. Cassidy Trucking, Inc., 646 F.2d 865, 868 (4th Cir.1981) (same).
 
 
 15
 In response, NEBF points out that while section 1103(c)(2)(A)(ii) does not prohibit refunds of overpayments, neither does it require them. Consequently, NEBF urges a construction of the statute under which refund decisions would be made solely under the refund policy adopted by the trustees pursuant to their discretionary authority under ERISA, subject to judicial review only under an arbitrary or capricious standard. Contending that its three-year refund limitation policy is neither arbitrary nor capricious, and that it is rationally related to the protection of the fund's fiscal stability, NEBF urges reversal of Judge McCurn's award to Dumac. As support for its position, Dumac relies upon cases in which more restrictive refund policies than the one now at issue have been upheld. See, e.g., Crews v. Central States Pension Fund, 788 F.2d 332 (6th Cir.1986) (one-year refund limitation policy upheld); Trustees of Cent. California Prod. Workers' Trust Fund v. Acosta, 6 Empl.Ben.Cas. (BNA) 2697 (N.D.Cal.1985) ("no refund" policy upheld); Electricians Health, Welfare & Pension Plans, I.B.E.W. Local 995 v. Gulino, 594 F.Supp. 1265 (M.D.La.1984) (one-year refund limitation policy upheld); Fuller Cinder Co. v. Central States Pension Fund, 2 Empl.Ben.Cas. (BNA) 2458 (E.D.Mich.1982) (same).
 
 
 16
 We note the limited standard under which we may review the administrative acts of pension fund trustees. "As a general rule federal courts should refrain from interfering with the administration of a pension plan unless its trustee or administrator has acted in an arbitrary or capricious manner." Building Trades Employers Ass'n v. New York State Teamsters Conference Pension & Retirement Fund, 761 F.2d 115, 117 (2d Cir.1985) (citations omitted). We have consistently held that "the lawful, discretionary acts of a pension committee should not be disturbed, absent a showing of bad faith or arbitrariness." Miles v. New York State Teamsters Conference, 698 F.2d 593, 599 (2d Cir.) (citations omitted), cert. denied, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983).
 
 
 17
 This standard of review must be considered in conjunction with the permissive language of section 1103(c)(2)(A)(ii). We observe that the statute neither commands nor precludes the payment of refunds; "it merely permits the return of contributions mistakenly made." Award Service, 763 F.2d at 1068. The statute "does not say that payments made under a mistake of fact necessarily will be returned." Teamsters Local 639, 646 F.2d at 868. Our central inquiry, then, is whether the trustees' adoption of the three-year refund limitation policy was arbitrary or capricious. Judge McCurn properly noted the applicable "arbitrary or capricious" standard of review and was unwilling to find, as a matter of law, that the policy was arbitrary. We agree that on the limited record before him, he could not have done otherwise. It was improper, however, for the district court to grant summary judgment in favor of Dumac, allowing the employer to offset overpayments made outside the three-year limitation against its future obligations to the fund. Such an award assumes an obligation on the part of the fund to return overpayments, without regard to an established refund policy. The assumption is incorrect. A refund in contravention of the trustees' rule cannot be awarded unless supported by a determination that the refund policy is arbitrary or capricious.
 
 
 18
 We think it apparent that a determination as to the trustees' refund policy could not be made on the record before the district court at the time the cross-motions for summary judgment were made. It is beyond dispute that protection of the financial integrity of multiemployer pension funds is the touchstone of ERISA. See 29 U.S.C. Sec. 1001 (1982). Consequently, NEBF's refund limitation rule must be evaluated in light of actuarial and other data considered by the trustees when they adopted the rule--data that were not part of the record before the district court. For example, although NEBF contends that its rule was adopted to secure the fund's fiscal stability by barring refunds of large overpayments made over long periods of time, we have been directed to no support in the record for that assertion. Indeed, Dumac points to certain NEBF responses to interrogatories that lend support for the opposite conclusion. Appellee's Brief at 16-17.
 
 
 19
 We conclude that a remand is required to determine whether the refund rule is arbitrary or capricious. We also conclude that in light of the permissive wording of section 1103(c)(2)(A) and the arbitrary or capricious standard governing review of the pension trustees' policy, the party challenging the policy must demonstrate that it is arbitrary or capricious. Even if plaintiff establishes that the three-year rule is arbitrary or capricious, it then "will have to establish that the equities favor restitution in order to succeed on the merits. A principal equitable consideration is whether restitution would undermine the financial stability of the plan." Award Service, 763 F.2d at 1069 (citation omitted).
 
 
 20
 As to Dumac's cross-appeal, we perceive no basis for disturbing the district court's denial of Dumac's claim for accrued interest on its overpayments. Judge McCurn concluded that an interest award would contravene the section 1103(c)(1) prohibition against fund assets inuring to the benefit of the employer, and he cited as additional authority Peckham v. Board of Trustees of the Int'l Bhd. [of Painters] & Allied Trades Union, 724 F.2d 100 (10th Cir.1983). The Peckham court rejected an employer's claim for interest, based on a regulation proposed by the U.S. Treasury prohibiting the payment of interest on overpayments. Id. at 101. While Dumac correctly points out that the proposed regulation has not been adopted, it cites no statutory or case authority to support an interest award. Additionally, under generally accepted principles of restitution, the duty to pay interest attaches only at the time the duty to make restitution is breached. Restatement of Restitution Sec. 156 comment a (1937); 66 Am.Jur.2d Restitution Sec. 171 (1973). Where one receives property under mistake of fact, however, no duty to make restitution is breached until a lawful demand is made and refused, id. Sec. 121, and the good faith of the party upon whom demand is made is a factor in determining whether interest is to be awarded. 47 C.J.S. Interest & Usury Sec. 14 (1982). Inasmuch as no determination has yet been made as to the propriety of NEBF's refusal to return Dumac's overpayments, and that refusal unquestionably is grounded in NEBF's good faith belief in the lawfulness of its refund policy, no interest could have accrued on the overpayments. Accordingly, we affirm the district court's rejection of Dumac's claim for interest.
 
 CONCLUSION
 
 21
 For the reasons set forth above, we affirm the district court's denial of appellee's claim for accrued interest on its erroneous contributions to appellant NEBF. We reverse the district court's summary judgment award of offsets against appellee's future obligations to the pension fund and we remand for a determination of whether the fund's refund limitation policy is arbitrary or capricious.
 
 
 
 *
 Judge Mansfield, originally a member of the panel, died on January 7, 1987. The appeal is being decided by the remaining members of the panel pursuant to Local Rule Sec. 0.14(b)