**AIRCO INDUSTRIAL GASES, INC. DIVISION OF THE BOC GROUP, INC., Appellant,**

v.

**The TEAMSTERS HEALTH AND WELFARE PENSION FUND OF PHILADELPHIA AND VICINITY, Pension Trust Fund of Philadelphia and Vicinity.**

**No. 87–3642.**

United States Court of Appeals, Third Circuit.

Argued March 1, 1988.

Decided June 30, 1988.

Robert J. Bray, Jr. (argued), Stephen M. McManus, Robert J. Bray & Associates, Philadelphia, Pa., for appellant.

Francis J. Trzuskowski (argued), Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, Del., for appellees.

Before SEITZ, HIGGINBOTHAM and COWEN, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, JR., Circuit Judge.

This appeal concerns an employer's suit to recover nearly seven years worth of erroneous overpayments to a multiemploy-

er employee benefit plan. On cross-motions for summary judgment, the district court held that the plaintiff-employer had a federal common law cause of action to recover the overpayments, in the nature of an equitable action for unjust enrichment. After a bench trial, the district court ultimately entered judgment for the plaintiff-employer and ordered the benefit plan to refund the employer's overpayments, but only for the last four months of this seven-year mistake. Thus, while the employer sought to recover approximately $25,000, it recovered only $1,500.

We are unable to review the district court's legal conclusion concerning the existence of a federal common law cause of action, because the defendant-benefit fund has not cross-appealed from the district court's final judgment. The appeal that is before us, brought by the employer, seeks a larger refund than the district court awarded. The employer also appeals from those aspects of the district court judgment that deny interest on the refund award and attorneys' fees.

We hold that the district court's factual findings concerning the applicable refund policy and time period were clearly erroneous because the court disregarded a key pretrial admission of fact. Accordingly, we will vacate the refund award. On remand, the district court will enter a larger refund judgment that reflects the one year refund policy in effect at the time of the employer's refund request. We will affirm, however, the district court's legal conclusions concerning attorneys' fees and interest.

## I. *BACKGROUND*

Appellant Airco Industrial Gases ("Airco"), a corporation located in Delaware, is an employer of unionized labor. Appellee,

the Teamsters Health and Welfare Pension Fund of Philadelphia and Vicinity ("the Fund"), is a multiemployer employee benefit plan, as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1401 (1982). During the time period in question, Airco was a party to two collective bargaining agreements. One of these agreements (and its predecessor agreements) obligated Airco to make contributions to the Fund on behalf of its driver employees. The other agreement obligated Airco to make pension contributions to a pension plan other than the Fund, on behalf of its production and maintenance employees.

The mix-up underlying this lawsuit began in 1976, when Airco erroneously informed the Fund that two of its employees, John Lucas and Walter Dobromilski, were covered by the collective bargaining agreement that required contributions to the Fund. Without verification, the Fund accepted Airco's representation that it owed the Fund monthly contributions for these two employees. From June 1976 to April 1983, Airco made contributions totaling $25,831.41 to the Fund on behalf of Lucas and Dombromilski. These men, however, were production and maintenance employees, not drivers. Airco, therefore, was not obligated to make any such contributions to the Fund.

During a review in 1983 of its corporate pension plan contributions, Airco discovered its error. On July 6, 1983, it notified the Fund of the situation and demanded a return of the mistaken contributions, with interest. A second such request was made in August 1983. In a letter dated September 26, 1983, the Fund rejected Airco's refund demand.[1] The letter declared

---

1. As legal authority for its denial of Airco's refund request, the Fund's letter cited a then-recent judgment order of this Court, *Crown Cork & Seal Co. v. Teamsters Pension Fund of Philadelphia & Vicinity*, 720 F.2d 661 (3d Cir.1983) (table), *aff'g* 549 F.Supp. 307 (E.D.Pa.1982), in which this Court was represented to have "ruled that an employer has no right of action under [ERISA], as amended, for the return of mistakenly-made contributions to multiemployer funds." Joint Appendix at 934. According to

the letter, this Court "held that the Trustees ... have the sole and exclusive authority and responsibility to manage the assets of the Funds." *Id.*

   The Fund's letter did not accurately describe the legal force of a judgment order in this Circuit. Under the Internal Operating Procedures ("IOPs") of this Court, a judgment order, which is never published, is entered "when the panel unanimously determines ... that a written opinion would have no precedential or institutional

that "the Trustees of the Teamsters Health and Welfare and Pension Funds of Philadelphia and Vicinity have concluded that no overpaid contributions shall be returned to any employer." Joint Appendix ("J.A.") at 934. The letter also announced the Fund's "further determin[ation] that no contributing employer shall be entitled to an offset against delinquent contributions due and owing." *Id.* The Fund's administrator stated to Airco, at a later date, that Lucas and Dombromilski, who were not covered by the relevant collective bargaining agreement, would never be eligible to receive benefits from the Fund.

Airco filed this federal lawsuit against the Fund on March 2, 1984 in the United States District Court for the District of Delaware. Airco's complaint alleged four distinct causes of action: (1) an action under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (1982); (2) an action under section 302 of the LMRA, 29 U.S.C. § 186 (1982); (3) an action under section 403(c) of ERISA, 29 U.S.C. § 1103(c) (1982); and (4) an action under the Delaware common law of unjust enrichment. On cross-motions for summary judgment, the district court held that Airco had no express or implied statutory cause of action under LMRA or ERISA. It further held, however, that Airco could maintain an action to recover its erroneous overpayments under "the federal common law of unjust enrichment." *Airco Industrial Gases, Inc., v. Teamsters Pension Trust Fund of Philadelphia & Vicinity,* 618 F.Supp. 943 at 945 (D.Del.1985) ("Airco I"). Accordingly, Airco was permitted to file an amended complaint, and the matter proceeded to trial.

At the conclusion of a four-day bench trial on the "unjust enrichment" cause of action and a post-trial hearing, the district court entered judgment for Airco. *Airco Industrial Gases, Inc. v. Teamsters Pension Trust Fund of Philadelphia & Vicin-*

*ity,* 668 F.Supp. 893, 906 (D.Del.1987) ("Airco II"). The district court found as a factual matter that the Fund had adopted a "no refund" policy in March 1981 which was still in effect in 1983 when it received Airco's refund request. *Id.* at 900. The district court also found, however, that due to an error in policy implementation, the Fund had paid refunds to other employers whose claims were for overpayments during the period January to July, 1983. *Id.* at 903. The district court thus held that, while the Fund's denial of Airco's 1983 refund request was not arbitrary and capricious in light of the "no refund" policy that was in effect at the time of the request, Airco was entitled to recoup its overpayments for the period when the Fund was in fact paying refunds. *Id.* The district court thus ordered "the Fund to return all excess contributions Airco made on behalf of Messrs. Dombromilski and Lucas from January to April, 1983...." *Id.* Subject to the necessary audits, the district court estimated that Airco's overpayments during this period amounted to $1,568.00. *Id.*

Airco, but not the Fund, appealed to this Court. Our appellate jurisdiction is conferred by 28 U.S.C. § 1291 (1982).

## II. THE DISTRICT COURT'S SUBJECT MATTER JURISDICTION

Asserting that this Court must " 'satisfy itself not only of its own jurisdiction, but also that of the [district] courts in a cause under review,' " *Bender v. Williamsport Area School District,* 475 U.S. 534, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986) (citation omitted), the Fund urges this Court to examine whether the district court had subject matter jurisdiction over the cause of action that it identified, *Airco I,* 618 F.Supp. at 950, and upon which Airco ultimately partially recovered its overpayments: an equitable action of unjust

value...." IOP Chapter 6.A.1.a. [Judgment Orders]. The IOPs are thus understood to establish, at least by implication, that a judgment order of this Court resolves no more than that particular appeal. A judgment order does not bind district courts in this Circuit (including the

district from which the appeal that produced the judgment order was taken) or subsequent panels of this Court. *Cf.* IOP Chapter 8.C. [Hearing or Rehearing *In Banc* Criteria] ("no subsequent panel overrules a published opinion of a previous panel.").

enrichment under the federal common law of ERISA.

In support of its argument that the district court lacked subject matter jurisdiction, the Fund relies primarily on *Crown Cork & Seal Co. v. Teamsters Pension Fund of Philadelphia & Vicinity,* 720 F.2d 661 (3d Cir.1983) (*"Crown Cork"*) (table), *aff'g* 549 F.Supp. 307 (E.D.Pa.1982), and *Dime Coal Co., Inc. v. Combs,* 796 F.2d 394 (11th Cir.1986) (*"Dime Coal"*). In *Crown Cork,* this Court affirmed by judgment order a decision of the district court that found no implied statutory right of action in ERISA for recovery of employer overpayments. *Accord Dime Coal,* 796 F.2d at 399 ("The district court erred in refusing to dismiss Dime Coal's complaint for failure to state a claim upon which relief could be granted."). The Fund argues that a federal common law cause of action should not be recognized for the same reasons that the *Crown Cork* and the *Dime Coal* courts refused to find an implied cause of action in ERISA for employer overpayments.

In fact, the district court here made the same finding as did the district court in *Crown Cork* and the court of appeals in *Dime Coal.* Specifically, it found that no implied cause of action exists under section 1103(c)(2)(A) of ERISA. *Airco I,* 618 F.Supp. at 950. Thus, assuming *arguendo* that this is a valid argument regarding the district court's lack of jurisdiction, we fail to see how these other decisions indicate a lack of subject matter jurisdiction any more than does the district court's own legal analysis in this case.[2]

■ More significantly, however, the Fund misapprehends the distinction between the existence of subject matter jurisdiction and the existence of a cause of action. The district court found that it had jurisdiction pursuant to 28 U.S.C. § 1331 (1982). *Airco I,* 618 F.Supp. at 950 n. 5. Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1982). The question of whether the district court had subject matter jurisdiction pursuant to this statute is not whether Airco had a *valid* cause of action against the Fund under federal common law. Rather, the subject matter jurisdiction analysis is one of whether the determination of the existence *vel non* of that cause of action is a question "arising under the ... laws ... of the United States."[3] 28 U.S.C. § 1331 (1982).

---

**2.** For several other reasons, *Crown Cork* and *Dime Coal* are inapposite. The district court's opinion in *Crown Cork* did not address the question of whether an equitable, federal common law cause of action exists. Thus, the question of the validity of this specific cause of action was not before this Court on appeal. Even if it had been, this Court affirmed the district court's decision by judgment order which is a judgment without precedential value. *See supra* n. 1.

The court of appeals in *Dime Coal* did hold that "no federal common law right to recovery of the disputed contributions at issue in this case exists." *Dime Coal,* 796 F.2d at 399 n. 7. However, it prefaced this holding with the observation that "the question is not well presented, since appellee has not seriously pursued this alternative basis for affirmance on its appeal." *Id.* Most importantly, however, the *Dime Coal* decision is not a decision of this Court. We of course are not bound by a decision of the Court of Appeals for the Eleventh Circuit.

**3.** Justice Black's opinion for the Court in *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), illuminates this distinction. He wrote:

> where the complaint, as here, is so drawn as to seek recovery directly under the Constitu-

tion or laws of the United States, the federal court ... must entertain the suit.... The reason for this is that the court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief.... Jurisdiction, therefore, is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted ... must be decided after and not before the court has assumed jurisdiction over the controversy.

327 U.S. at 681–82, 66 S.Ct. at 776. *Accord Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor,* 619 F.2d 231, 244 (3d Cir.1980) ("Certainly a complaint alleging a cause of action for private relief implied from the provisions of the United States Constitution states a claim within the subject matter jurisdiction of the district court.... The legal sufficiency of that claim is a separate matter...."), *cert. denied,* 449 U.S. 1096, 101 S.Ct. 893, 66

The distinction between subject matter jurisdiction and cause of action was recognized by the district court when deciding the question of whether an implied cause of action under ERISA exists. *Airco I,* 618 F.Supp. at 947. The district court, moreover, made an explicit finding that it "ha[d] jurisdiction under 28 U.S.C. § 1331 over actions arising under federal common law." *Id.* at 950 n. 5. It then proceeded to articulate a cause of action under the federal common law of ERISA, in the nature of an equitable action for unjust enrichment. *Id.* at 950.

Mere invocation by a plaintiff or court of section 1331, is not enough, by itself, to confer federal question jurisdiction. The Supreme Court has noted at least two situations in which federal question jurisdiction would not obtain, despite a plaintiff's reliance on section 1331: "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Regarding "actions arising under ... the laws of the United States," 28 U.S.C. § 1331 (1982), this Court has stated that this provision of section 1331 can be invoked "if and only if the complaint seeks a remedy expressly granted by a federal law or if it requires

the construction of a federal statute or a distinctive policy of a federal statute requires the application of federal legal principles for its disposition." *Lindy v. Lynn,* 501 F.2d 1367, 1369 (3d Cir.1974).

█ Under the *Lindy* test, "a distinctive policy of a federal statute," 501 F.2d at 1369, is, in this case, ERISA's preemption of most state law actions in the pension field. 29 U.S.C. § 1144(a) (1982). Furthermore, this "distinctive policy" of ERISA does require the application of federal legal principles for its disposition in this case, that is, federal common law principles. *See Illinois v. City of Milwaukee, Wisconsin,* 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972) ("§ 1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin."); *Northeast Dept. ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147, 149 (3d Cir.1985) ("*Northeast Department*") (Becker, J., joined by Sloviter, J.) (subject matter jurisdiction exists pursuant to § 1331, to determine a question that implicates ERISA).[4] Finally, the issue presented in this case is one "of central concern" to ERISA, notwithstanding the district court's finding that no statutory cause of action existed. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 26–27, 103 S.Ct. 2841, 2855, 77 L.Ed.2d 420 (1983).[5] Thus, while

L.Ed.2d 824 (1981); *Johnsrud v. Carter,* 620 F.2d 29, 32–33 (3d Cir.1980) ("Dismissal on jurisdictional grounds and for failure to state a claim are analytically distinct, each bearing different burdens and each implicating different legal principles.").

4. In *Northeast Department,* each of the three judges on the panel had a different view as to the jurisdictional basis of an action brought by one employee benefit plan against another, seeking declaration of which plan was "responsible for the medical bills of a woman who [wa]s a participant of the former and a beneficiary of the latter." 764 F.2d at 149. Two judges concurred in the result that 28 U.S.C. § 1331 provided the basis for jurisdiction over a question implicating ERISA. In Judge Becker's view, "the rule enunciated in Illinois v. Milwaukee should be applicable in ERISA related actions. Thus, if the ... Fund's claim arises under federal common law, there is jurisdiction over this action pursuant to § 1331(a)." 764 F.2d at 156.

5. Both *Franchise Tax Board* and *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), decided by the Supreme Court on the same day, address the existence of federal jurisdiction over claims that relate to ERISA. In *Franchise Tax Board,* the Court stated that "it is clear that a suit by state tax authorities ... does not 'arise under' ERISA ... [because] the State's right to enforce its tax levies is not of central concern to the federal statute." 463 U.S. at 25–26, 103 S.Ct. at 2855. By contrast, the Court decided in *Delta Air Lines* that a suit seeking an injunction *against* "enforcement of state laws ... claim[ed to be] pre-empted by ERISA ... presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." 463 U.S. at 96 n. 14, 103 S.Ct. at 2899 n. 14.

We interpret *Franchise Tax Board* and *Delta Air Lines* to teach that, at a minimum, federal question jurisdiction exists pursuant to ERISA where the rights being disputed are "of central concern to the federal statute." *Franchise Tax*

**1034**

the district court did not elaborate on why subject matter jurisdiction exists, we agree with its conclusion that section 1331 conferred upon it subject matter jurisdiction to determine the existence of a federal common law cause of action based on unjust enrichment.

■ Unlike issues of jurisdiction, which this Court may examine *sua sponte*, see *Bender*, 475 U.S. at 541, 106 S.Ct. at 1331, this Court cannot *sua sponte* examine the question of the validity of the cause of action found by the district court. The Fund did not cross-appeal. It is well-settled that "[w]hat [an appellee] may not do in the absence of a cross-appeal is to 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary....' Th[is] rule is inveterate and certain." *Morley Construction Co. v. Maryland Casual-*

---

Board, 463 U.S. at 26, 103 S.Ct. at 2855. The instant dispute meets this condition because it involves a statutory exemption from the anti-inurement provision codified in 29 U.S.C. § 1103(c)(1). *See* 29 U.S.C. § 1103(c)(2)(A)(ii) (1982). Thus we agree with Judge Becker's view in *Northeast Dept.* that *Franchise Tax Board* did not foreclose section 1331 jurisdiction over "claims ... [that] could arise under the federal common law developed pursuant to ERISA," 764 F.2d at 156 n. 7, so long as the claims are "of central concern" to ERISA.

**6.** The question whether an action by employer-contributors to recover overpayments can be implied from ERISA, or created under the theory of unjust enrichment, is one that is currently hotly debated. *See, e.g., Dumac Forestry Services, Inc. v. International Brotherhood of Electrical Workers,* 814 F.2d 79, 82 (2d Cir.1987) (payments made under mistake of fact are only required to be returned if the refusal to do so was "arbitrary or capricious"); *Dime Coal Co., Inc. v. Combs,* 796 F.2d 394, 397–99 (11th Cir. 1986) (no implied right of action under ERISA and no federal common law right to recovery); *Whitworth Bros. Storage Co. v. Central States,* 794 F.2d 221, 236 (6th Cir.) (finding federal common law of action to recover on a contractual claim), *cert. denied,* —— U.S. ——, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986); *Crews v. Central States, Southeast and Southwest Areas Pension Fund,* 788 F.2d 332, 337 n. 3 (6th Cir.1986) (allowing action to recover under contract); *Award Service, Inc. v. Northern California Retail Clerks Union & Food Employers Joint Pension Trust Fund,* 763 F.2d 1066, 1068 (9th Cir.1985) (finding implied cause of action under ERISA), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 850, 88 L.Ed.2d 890 (1986); *Chase v. Trustees of West-*

---

*ty Co.,* 300 U.S. 185, 191, 57 S.Ct. 325, 328, 81 L.Ed. 593 (1937) (*quoting United States v. American Railway Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087 (1924)). The precise legal question of the validity of the cause of action found by the district court is not presented in this appeal and therefore we do not reach this issue.[6]

### III. *THE DISTRICT COURT's FACTUAL FINDINGS*

■ As the district court stated, "[t]he key [factual] question [in this case] is what refund policy the Fund operated under when Airco submitted its refund request in July, 1983." *Airco II,* 668 F.Supp. at 894–95. The district court's central finding of fact was that the Fund's one year refund policy, which was originally adopted in June 1979,[7] was *not* in effect in July 1983

---

ern Conference of Teamsters Pension Trust Fund, 753 F.2d 744, 749 (9th Cir.1985) (finding implied cause of action when equitable principles would allow restitution); *Peckham v. Board of Trustees,* 719 F.2d 1063, 1066 (10th Cir.1983) (permitting restitution when trust fund would not be underfunded as a result); *Van Orman v. American Ins. Co.,* 680 F.2d 301, 312 (3d Cir. 1982) (no federal common law cause of action under doctrine of unjust enrichment when "such a right would override a contractual provision"); *Teamsters Local 639–Employers Health Trust v. Cassidy Trucking, Inc.,* 646 F.2d 865, 868 (4th Cir.1981) (finding that determination that payment was made due to a mistake of fact does not make return automatic unless traditional equitable principles point toward return); *Soft Drink Industry Local Union No. 744 Pension Fund v. Coca-Cola Bottling Co. of Chicago,* 679 F.Supp. 743, 747–51 (N.D.Ill.1988) (finding a common law right of action but no implied right of action); *Ryan–Walsh Stevedoring Co. v. Cormier,* 675 F.Supp. 337, 340 (E.D.La.1987) (finding a federal common law cause of action for breach of contractual duties and fiduciary obligations); *Carpenters Local 1471 v. Bar–Con, Inc.,* 668 F.Supp. 560, 568–69 (S.D.Miss.1987) (no implied right of action); *McHugh v. Teamsters Pension Trust Fund of Philadelphia,* 638 F.Supp. 1036, 1048–49 (E.D.Pa.1986) (no implied right of action); *Crown Cork & Seal Co., Inc. v. Teamsters Pension Fund of Philadelphia & Vicinity,* 549 F.Supp. 307, 311 (E.D.Pa.1982) (no implied cause of action), *aff'd,* 720 F.2d 661 (3d Cir.1983) (table).

**7.** It is undisputed that as of June 7, 1979, the Fund had a refund policy that allowed a refund for contributions based on mistakes of fact, for

when Airco requested a refund of its overpayments to the Fund. Although the district court commented several times upon the inconsistency of the evidence concerning the Fund's position that it had adopted a no-refund policy at the March 1981 meeting of its trustees, *id.* at 899–900, the district court ultimately agreed with this position. Our review of the district court's factual findings is governed by the "clearly erroneous" standard. *See* Fed.R.Civ.P. 52(a); *Leeper v. United States,* 756 F.2d 300, 308 (3d Cir.1985). Under this standard, the district court's findings should not be set aside unless "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

During discovery, Airco had submitted to the Fund a request for admissions pursuant to Federal Rule of Civil Procedure 36.[8] Among the proposed admissions was Admission No. 23, which stated:

At the November 3, 1983, meeting of the trustees of Defendant Teamsters Pension Fund, the trustees unanimously *agreed to adopt* a policy whereby there would be no voluntary return of employer contribution overpayments.

J.A. at 870 (emphasis added). The Fund responded by admitting to this proposed statement of fact. *Id.* The parties prepared a pretrial order that included this admission as plaintiff's exhibit 16, *id.* at 24, and the district court apparently admitted this and other admissions into evidence during a pre-trial conference held March 2,

1987. Airco argues that this admission "conclusively established that the Fund did adopt the 'no-refund' policy on November 3, 1983—not in 1981." Appellant's Brief at 20. We agree with Airco.

The question of the effect of admissions made under Federal Rule of Civil Procedure 36 has not been extensively litigated. The 1970 amendment to this rule added two new sentences to subsection (b), which now begins:

Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provision of Rule 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.

Fed.R.Civ.P. 36(b). The advisory committee notes with respect to subsection (b) state that, before the addition of these two sentences, "[s]ome courts view[ed] admissions as the equivalent of sworn testimony ... [that] may [be] rebut[ted].... The new provisions give an admission a conclusively binding effect ... unless the admission is withdrawn or amended."

The most insightful commentary on the rationale underlying this provision of Rule 36 appeared seven years before the passage of the 1970 amendments. Noting that

amounts paid within one year prior to the date of the refund request. *Airco II,* 668 F.Supp. at 895. As the district court explained, the change in this 1979 policy arose in response to the uncertainty created by the Multiemployer Pension Plan Act Amendments ("MPPAA"), 29 U.S.C. § 1103(c)(2)(A)(ii) (1982). 668 F.Supp. at 895. Specifically, the MPPAA amended ERISA so as to eliminate the one year refund provision and the exclusion of refunds for overpayments made as a result of mistakes of law; it also provided for a refund period of six months from the time of the plan administrator's determination that a mistake resulted in a contribution. *Id.*

**8.** Rule 36 provides, *inter alia,* that

[a] party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact including the genuineness of any documents described in the request.... A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request: the party may, subject to the provisions of Rule 37(c), deny the matter or set forth reasons why the party cannot admit or deny it.

Fed.R.Civ.P. 36(a).

the rule as then written did not bind the party making the admission, Judge Freedman stated that

> Rule 36 serves a salutary purpose as one of the means for reducing the area of dispute at the trial. Requests for admission of relevant facts under Rule 36 would be even less useful than interrogatories to parties under Rule 33 if they were not conclusively binding on the party making the admission.... An answer to a request under Rule 36 is unlike a statement of fact by a witness made in the course of oral evidence at a trial, or in oral pre-trial depositions, or even in written answers to interrogatories. *It is on the contrary a studied response, made under sanctions against easy denials, to a request to assert the truth or falsity of a relevant fact pointed out by the request for admission....* [T]he presence of the party's oath in both instances, with its sanction of the penalty for perjury, does not make an admission of a request the same in all respects as sworn testimony. For *requests for admission, although answered under the oath of a party, are normally made under the direction and supervision of counsel, who has full professional realization of their significance. Therefore, their similarity to sworn testimony in one respect should not reduce their effect from conclusive admissions to merely evidential ones.*

*McSparran v. Hanigan,* 225 F.Supp. 628, 636–37 (E.D.Pa.1963), *aff'd,* 356 F.2d 983 (3d Cir.1966) (emphasis added). As one commentator has noted, courts prior to the 1970 amendments seemed "to ignore the distinction between evidential admissions and judicial admissions.... A judicial admission, deliberately drafted by counsel for the express purpose of limiting and defining the facts in issue, is traditionally regarded as conclusive, and an admission under Rule 36 falls into this category."[9] 8 C.

Wright & A. Miller, Federal Practice and Procedure: Civil § 2264, at 742–43.

Our scrutiny of the admission in question here leaves us with no doubt that the "no refund" policy was adopted by the Fund's trustees in their November 3, 1983 meeting. The language of the statement that "the trustees unanimously *agreed to adopt* a policy" at that meeting, J.A. at 870 (emphasis added), is unambiguous. The district court mentions the admission only once in its final opinion, *Airco II,* 668 F.Supp. at 898 n. 4, and there the court seems to construe the admission to refer only to the date upon which the trustees reaffirmed the Fund's no-refund policy and approved the September 26 letter to Airco as a statement of that policy. We cannot agree that the admission refers only to the trustees' reaffirmance of the March, 1981 no refund policy. The admission is plainly worded, and does not refer to any previous decisions of the trustees. The admissions preceding this particular admission also make no reference to previous trustee decisions regarding the refund policy. *See* J.A. at 865–69. Where there is a dispute as to the meaning of an admission, we will not contort the plain wording of the admission to favor either party's interpretation. No compelling reason has been put forward to construe the admission in any manner other than the way in which we construe it.

Parenthetically, there is no evidence contradicting this admission, for, as the district court pointed out, "[t]he record contains no evidence contemporaneous to the period from September, 1981 to November 1983, when defendant asserts it ... operated under a 'no refund' policy." *Airco II,* 668 F.Supp. at 899. Therefore, we are not faced with a situation in which the admission in question is contradicted by compelling evidence. But even if the Fund could point to conflicting testimonial evidence, the failure of the Fund to withdraw or

---

**9.** Federal Rule of Civil Procedure 56(c) also contemplates the binding effect of admissions made pursuant to Rule 36, by allowing a court to grant summary judgment based on, *inter alia,* the "admissions on file." This Court has approved a district court's summary judgment based in part on a Rule 36 admission. *Good-*

*man v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *accord United States v. Skalsky,* 71 F.R.D. 564 (E.D.Pa.1976), *aff'd,* 556 F.2d 570 (3d Cir.1977); *Jackson v. Riley Stoker Co.,* 57 F.R.D. 120 (E.D.Pa.1972).

amend this admission prior to trial would, according to the first sentence of Rule 36(b), operate to waive any objection to the truth of its contents.

This admission is not merely another layer of evidence, upon which the district court can superimpose its own assessment of weight and validity. It is, to the contrary, an unassailable statement of fact that narrows the triable issues in the case. Thus we hold that the district court's factual finding that, at the time of Airco's refund request in July 1983, a "no refund" policy was in effect, is clearly erroneous. We will therefore remand this case to the district court for modification of its award, to reflect the one year refund policy in effect at the time of the refund request.

## IV. *INTEREST*

■ The district court denied Airco's request for interest on the refund amount, holding that policies underlying ERISA prevented it from exercising its equitable powers to award interest. *Airco II,* 668 F.Supp. at 904–05. It was specifically concerned with the policy embodied in 28 U.S.C. § 1103(c)(1), which provides that assets "shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." Reasoning that this anti-inurement provision permits restitution, but does not mandate full restitution, the district court stated that

> [i]nterest, which is the accrued value of money over time, is not a part of the overpayment but an incident of it. The amount of interest a court might award comes directly from the plan's assets and will deprive participants and beneficiaries of its use.... The decision to order restitution is an effort at correcting an injustice, but payment of interest means an amount greater than that paid in as excess contributions may be awarded while the fund has encountered certain [administrative] costs related to the overpayments. An award of interest, there-

fore, could cost the fund more than if the excess contribution had never been made.

*Id.* at 904. The district court concluded that section 1103(c)(1) barred an interest award that presented a potential danger of "diminishing a plan's assets." *Id.* at 905; *accord Dumac Forestry Services, Inc.,* 814 F.2d at 83 (2d Cir.1987) (denying interest on restitutionary award); *Peckham v. Board of Trustees,* 724 F.2d 100 at 101 (10th Cir. 1983) (same).

Airco argues that the district court erred in adopting what is essentially a *per se* rule against awarding interest in restitution actions. Appellant's Brief at 40–41. It contends that any determination of whether interest should be awarded should depend on a specific determination of the impact of the interest award on the pension fund's financial stability. *Id.* We agree with the district court that the anti-inurement policy of ERISA bars an award of interest on any refund, regardless of the fund's financial stability. We will therefore affirm the district court's denial of interest on any refunded amount.

## V. *ATTORNEYS' FEES*

The district court also denied Airco's request for attorneys' fees. *Airco II,* 668 F.Supp. at 906. It first decided that two express attorneys fee provisions within ERISA, 29 U.S.C. §§ 1132(g)(1) and 1451(e) (1982), were not applicable to this case. *Id.* at 905. As with its analysis of interest, the court then looked to the policies underlying ERISA, to determine whether an attorneys' fees award made pursuant to its equitable powers would conflict with any of those policies. It noted that the trustees' action in litigating this case was consistent with their fiduciary duty under 29 U.S.C. § 1104, and it decided that, as with an interest award, an award of attorneys' fees would "contravene the statute's policies expressed in § 1103(c)(1)." *Id.* at 905–06.

Airco views an action brought by a pension plan under section 1451 to recover

delinquent contributions from an employer as the mirror image of this action. Appellant's Brief at 42–43. It asserts that the district court should have, therefore, extrapolated an attorneys' fees provision from the express provision of section 1451 to the federal common law action here. *Id.* at 42–47.

██ We do not see why the express statutory remedy provided by section 1451 should be controlling in this action that is neither expressly nor impliedly predicated on ERISA. The legal remedy provided by section 1451 is unrelated to a federal common law cause of action allowing recovery under the theory of unjust enrichment. Furthermore, the result of the district court's analysis accords with the "American rule" that each side bears its own costs absent express statutory authority to the contrary. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 270–71, 95 S.Ct. 1612, 1628, 44 L.Ed.2d 141 (1975). We thus agree with the district court that attorneys' fees should not be awarded.

## VI.  *CONCLUSION*

For the foregoing reasons, we will vacate the monetary judgment of the district court and remand this matter for further proceedings. On remand, we will direct the district court to award the employer an amount in accordance with the one-year refund policy in effect at the time it made its refund request in July 1983. We will affirm the district court's denial of interest and attorneys' fees.